Jack BROAM and Jay Manning, Plaintiffs–Appellants,

v.

Robert BOGAN individually and in his Official Capacity as Former Deputy District Attorney for Churchill County; Richard Ingram, individually and in his Official Capacity as a Deputy Sheriff for Churchill County; Doe Defendants 1–10; Red and White Corporations; Black and Blue Municipal Entities 1–10, Defendants–Appellees.

No. 01–17246.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 16, 2003.

Filed Feb. 25, 2003.

pellate Rule 26(a) applied.

Richard F. Cornell, Law Offices of Richard F. Cornell, Reno, NV, Donald York Evans, Donald York Evans, Ltd., Reno, NV, for the plaintiffs-appellants.

Brett K. South, Rands South Gardner & Hetey, Reno, NV, for the defendants-appellees.

Before: HUG, ALARCÓN, and GRABER, Circuit Judges.

ALARCÓN, Senior Circuit Judge.

Jack Broam and Jay Manning appeal from the judgment entered on October 22, 2001, dismissing their first amended complaint for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] In their first amended complaint, Broam and Manning alleged that they were entitled to special

---

1. The court's October 22, 2001, order reads as follows: "IT IS ORDERED AND AD-

and punitive damages pursuant to 42 U.S.C. § 1983 because Robert Bogan and Charles Ingram, while acting under color of state law, violated their rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. Broam and Manning contend that the district court erred in concluding that (1) they failed to allege facts that demonstrate a constitutional violation as to certain claims; (2) Bogan was protected from liability under the doctrine of absolute immunity, regarding some of his alleged conduct; (3) Bogan and Ingram were entitled to qualified immunity regarding the remaining claims; (4) *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir.2001) (en banc), required the dismissal of the First and Fourth causes of action; and (5) under the Restatement (Second) of Torts § 667 and *Gowin v. Altmiller*, 663 F.2d 820, 823 (9th Cir.1981), probable cause for

arrest was established by the conviction of plaintiffs, even though that conviction was subsequently overturned. We vacate the dismissal of the first amended complaint because whether Bogan and Ingram can state a cause of action as to some of their claims may depend on when the alleged unconstitutional conduct occurred. No dates are set forth in the first amended complaint. We are persuaded that Broam and Manning should be given an opportunity to correct this omission. Following a recitation of the pertinent facts alleged in the first amended complaint,[2] we summarize the relevant jurisprudence regarding absolute and qualified immunity to assist the district court and counsel upon remand.

I

The first amended complaint contains the following allegations. Sometime be-

---

JUDGED that plaintiffs' second amended complaint filed on June 8, 2001, is *dismissed.*" The order erroneously refers to a second amended complaint. The pleading filed on June 8, 2001, was styled as the "first amended complaint."

Broam and Manning assert that this court has jurisdiction pursuant to 28 U.S.C. § 1291 because "the court entered a lengthy order which granted the Motion to dismiss the entire complaint *with prejudice.*" (emphasis added). This assertion is inaccurate. The district court's order did not state that the dismissal of the complaint was with prejudice.

Nor was Fed.R.Civ.P. 54(b) applicable as Appellants contend. The district court dismissed all of the claims, therefore Rule 54(b) is inapplicable.

We will consider a dismissal of a complaint without granting leave to amend a final and appealable order "[i]f it appears that the district court intended the dismissal to dispose of the action." *Hoohuli v. Ariyoshi*, 741 F.2d 1169, 1172 n. 1 (9th Cir.1984). In its October 19, 2001, memorandum order, the district court stated: "Plaintiffs have not demonstrated any section 1983 liability." In dismissing the original complaint, however, the court

granted Appellants leave to amend. We can infer from its failure to do so in its second dismissal order that the district court intended to dispose of this action without leave to amend. Therefore, we may treat the court's dismissal of the complaint as a final, appealable order pursuant to § 1291.

2. We must "accept as true the facts alleged in a complaint," dismissed pursuant to Rule 12(b)(6). *Zimmerman v. Oregon Dep't of Justice*, 170 F.3d 1169, 1171 (9th Cir.1999). In their brief before this court, Broam and Manning included facts that were not in their first amended complaint but were alleged in their opposition to the Rule 12(b)(6) dismissal motions. "In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n. 1 (9th Cir.1998). Facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice. *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137–38 (9th Cir.2001).

fore 1989, Broam and his wife, Angela Shearman, had an acrimonious divorce. After the divorce was granted, Shearman prevented Broam from having access to their two children, an eight-year-old son ("Broam's son") and a two-and-a-half-year-old daughter. A state court granted him the right to visit his children. Shearman asked Manning, who occasionally rode to work with Broam, to assist her in the custody fight. When Manning rebuffed Shearman's request she threatened to "get him."

Soon thereafter, allegations of abuse began to surface. Shearman took Broam's son to see David Manrique at the Indian Mental Health Center in Washoe County. Broam's son told Manrique that he was physically and sexually abused by his father.

Manrique subjected Broam's son to "fantasy therapy." This procedure involves eliciting from a subject verbal fantasies regarding sexual abuse. During "fantasy therapy," Broam's son also told Manrique that he was sexually abused by Manning and Privet. Manrique reported the alleged abuse to the Churchill County Sheriff's Office, Bogan and Ingram specifically, "pretrial." No tapes were made nor is there any manner available to confirm the techniques used in questioning Broam's son.

The case was assigned to then Sergeant Ingram for investigation. Ingram interviewed Broam's son repeatedly and took him to places in Churchill and Lyon Counties where the alleged abuse occurred and deliberately did not record these interviews and sessions, except for one that was recorded. This was at the direction of and in conspiracy with Bogan to deprive plaintiffs of due process of law.

Ingram worked closely with Bogan, who was then a Deputy District Attorney, concerning the sexual abuse report. Bogan directed Ingram to place Broam and Man-

ning in the same cell, which was wired for sound so that their conversations could be surreptitiously recorded. At that time, Broam and Manning were represented by counsel. Bogan and Ingram knew that Broam and Manning were represented by counsel. Neither Bogan nor Ingram sought judicial approval to tape record conversations in the cell. Bogan and Ingram did not notify Broam and Manning that their conversations had been recorded. Bogan did not place a copy of the transcript of the tape recording in his office file. The recording was later misplaced and its whereabouts were unknown for a considerable period of time. Eventually the transcript of the recording was located. The recording revealed that Broam and Manning had denied that they were guilty.

In order to develop the defense, a psychological evaluation of Broam's son was arranged with Dr. Earl Nielsen, a psychologist. Ingram transported Broam's son to Dr. Nielsen's office and insisted on being present at Dr. Nielsen's interview with Broam's son. His efforts prevented the defense expert's examination of Broam's son. Ingram acted pursuant to Bogan's instruction, and allegedly at the request of Angela Shearman, the child's mother, who had brainwashed the child against the Appellants.

Broam's son also stated that a third adult was either present at and/or participated in the alleged sexual assaults upon himself and his half-sister ("the half-sister"). Although Broam's son identified the third person as "Dimitri," the man's name was James Privet. Privet was married to Ingram's sister. Bogan directed Ingram not to have any contact with Privet even though he was a material percipient witness, and as Broam's son claimed, a participant in the alleged abuse. As a result, he was never interviewed.

Broam's son reported that his half-sister was a witness to the acts of sexual abuse. Ingram failed to interview her, however, or to notify the pertinent Nevada agencies that she was a material witness. As a result, she was placed out of the subpoena powers of the State of Nevada and was unavailable at trial as a witness. The half-sister eventually testified at Appellants' state habeas corpus hearing that Broam's son was not sexually abused at any time in her presence or within her earshot.

The stories Broam's son told Ingram and Bogan were such that if he were sexually abused as he described, he would have suffered severe rectal damage. Broam's son did not suffer rectal damage.

Broam's son attempted to recant his accusations, but Bogan stopped him. Bogan did not record, document, or advise defense counsel of this renunciation.

In 1990, Appellants were convicted at a jury trial. Broam was sentenced to four life terms without the possibility of parole and Manning was sentenced to a term of life imprisonment. Appellants petitioned the Third Judicial District Court for the County of Churchill for a writ of habeas corpus. In 1998, the writ was granted after Broam's son recanted his testimony accusing Appellants of sexual abuse.

## II

■ Rule 12(b)(6) motions are viewed with disfavor. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997). Dismissal without leave to amend is proper only in "extraordinary" cases. *United States v. City of Redwood*, 640 F.2d 963, 966 (9th Cir.1981). When ruling on a 12(b)(6) motion, the complaint must be construed in the light most favorable to the plaintiff. *Parks Sch. of Bus. Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The court must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn from them. *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir.1998).

■■ In order to allege a claim upon which relief may be granted under § 1983, a plaintiff must show that he or she has been deprived of a right " 'secured by the Constitution and ... laws' of the United States" and that the deprivation was " 'under color' " of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (quoting 42 U.S.C. § 1983). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979).

A state actor, such as a law enforcement officer, is entitled to qualified immunity in an action filed under § 1983 if his or her conduct during a criminal investigation either does not violate a federal constitutional right, or the constitutional right was not clearly established on the date of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

■ A state prosecutor is entitled to absolute immunity from liability under § 1983 for violating a person's federal constitutional rights when he or she engages in activities "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). A prosecutor is granted only qualified immunity, however, if he or she is performing investigatory or administrative functions, or is essentially functioning as a police officer or detective. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). A court may grant a prosecutor qualified immunity if the prosecutor's conduct as an investigator satisfies the two-step test for qualified immunity outlined by the Supreme Court in *Saucier*,

533 U.S. at 201, 121 S.Ct. 2151. Thus, immunity decisions regarding the liability of a state prosecutor depend on " 'the nature of the function performed, not the identity of the actor who performed it.' " *Kalina v. Fletcher,* 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (quoting *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)).

The Supreme Court has recognized that the "duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." *Imbler,* 424 U.S. at 431 n. 33, 96 S.Ct. 984. In the course of preparing for "the initiation of the criminal process and for a trial," a prosecutor may be required to obtain, review, and evaluate evidence. *Id.* "At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court." *Id.* However, the line between investigative activities, which are protected only by qualified immunity, and traditional prosecutorial duties, which are granted absolute immunity, is not clear. *Id.; see also Burns v. Reed,* 500 U.S. 478, 494, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (stating that the "concern with interference with the conduct closely related to the judicial process ... justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor's role in the judicial proceedings, not for every litigation-inducing conduct"); *Milstein v. Cooley,* 257 F.3d 1004, 1009 (9th Cir.2001) (explaining that the question is "whether the prosecutor's actions are *closely associated with the judicial process* ").

■■■■ Thus, in deciding whether to accord a prosecutor immunity from a civil suit for damages, a court must first determine whether a prosecutor has performed a quasi-judicial function. *Imbler,* 424 U.S. at 430, 96 S.Ct. 984. If the action was

part of the judicial process, the prosecutor is entitled to the protection of absolute immunity whether or not he or she violated the civil plaintiff's constitutional rights. *See Scheuer v. Rhodes,* 416 U.S. 232, 242, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) ("Implicit in the idea that officials have some immunity—absolute or qualified—for their acts, is a recognition that they may err. The concept of immunity assumes this and goes on to assume that it is better to risk some error and possible injury from such error than not to decide or act at all."); *see also Kalina,* 522 U.S. at 129, 118 S.Ct. 502 (holding that a prosecutor's preparation and filing of an information and a motion for an arrest warrant are protected by absolute immunity); *Imbler,* 424 U.S. at 431, 96 S.Ct. 984 (absolute immunity for initiating a prosecution); *Milstein,* 257 F.3d at 1008 (same); *Roe v. City & County of San Francisco,* 109 F.3d 578, 583–84 (9th Cir.1997) (absolute immunity for decision to prosecute and for professional evaluation of a witness "even if that judgment is harsh, unfair or clouded by personal animus"); *id.* at 584 (stating that "a prosecutor's professional evaluation of the evidence assembled by the police is entitled to absolute immunity"); *Forsyth v. Kleindienst,* 599 F.2d 1203, 1215 (3d Cir.1979) (holding that "to the extent that the securing of information is necessary to a prosecutor's decision to initiate a criminal prosecution, it is encompassed within the protected, quasi-judicial immunity afforded to the decision itself").

■■■■ A prosecutor is absolutely immune from liability for failure to investigate the accusations against a defendant before filing charges. *See O'Connor v. Nevada,* 686 F.2d 749, 750 (9th Cir.1982) (per curiam), *aff'g* 507 F.Supp. 546, 548–49 (D.Nev.1981) (holding that a prosecutor is immune from liability for failure to investigate adequately the accusations against a

defendant before charging him or her). A prosecutor is also absolutely immune from liability for the knowing use of false testimony at trial. *Imbler,* 424 U.S. at 431, 96 S.Ct. 984.

 A prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction is a violation of due process under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). It is, nonetheless, an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages. *See, e.g., Imbler,* 424 U.S. at 431–32 n. 34, 96 S.Ct. 984 (explaining that the "deliberate withholding of exculpatory information" is included within the "legitimate exercise of prosecutorial discretion"); *Long v. Satz,* 181 F.3d 1275, 1279 (11th Cir.1999) (per curiam) (quoting and affirming opinion of the district court to confirm the principle that, because " '[t]he task of evaluating the credibility of the alleged exculpatory information, and of determining its bearing on the trial and the prosecutor's decision whether to confess error and agree to have the verdict set aside, no doubt requires the exercise of prosecutorial discretion,' " a prosecutor is protected by absolute immunity for the failure to turn over exculpatory evidence that was discovered shortly after the defendant was sentenced); *Carter v. Burch,* 34 F.3d 257, 263 (4th Cir.1994) (holding that a prosecutor's decision whether or not to give defense counsel evidence alleged to be materially exculpatory which was either discovered "after [the § 1983 plaintiff's] arrest, but before his conviction," or while the prosecutor was "still functioning as an advocate for the State" in "post-trial motions and preparations for appeal," is "clearly part of the presentation of the State's case," and therefore a prosecutor is absolutely immune from liability for failure to turn over evidence); *Ybarra v. Reno Thunderbird Mobile*

*Home Village,* 723 F.2d 675, 679 (9th Cir. 1984) (holding that a district attorney's duty to preserve exculpatory evidence "would arise from his role as an officer of the court charged to do justice. An act or an omission concerning such a duty cannot be construed as only administrative or investigative; it too is necessarily related to [the prosecutor's] preparation to prosecute.") (citation omitted); *Fullman v. Graddick,* 739 F.2d 553, 559 (11th Cir. 1984) (holding that "[t]he district court properly dismissed plaintiff's claims that [the prosecutor] conspired to withhold evidence and to create and proffer perjured testimony"); *Prince v. Wallace,* 568 F.2d 1176, 1178–79 (5th Cir.1978) (per curiam) (extending absolute immunity to a prosecutor's actions in "initiating and pursuing a criminal prosecution and in presenting the state's case ... even where the prosecutor knowingly used perjured testimony, deliberately withheld exculpatory information, or failed to make full disclosure of all facts"); *Hilliard v. Williams,* 540 F.2d 220, 221 (6th Cir.1976) (per curiam) (holding that notwithstanding acts and omissions of state prosecutor in withholding certain information and in failing to prevent or correct deceptive and misleading testimony " 'deprived [the state defendant] of her constitutional right to a fair trial,' " prosecutor was absolutely immune) (quoting *Hilliard v. Williams,* 516 F.2d 1344, 1349 (6th Cir.1975)).

 Prosecutors are absolutely immune from liability for gathering additional evidence after probable cause is established or criminal proceedings have begun when they are performing a quasi-judicial function. *See, e.g., Imbler,* 424 U.S. at 431 n. 33, 96 S.Ct. 984 (stating that "[p]reparation, both for the initiation of the criminal process and for a trial, may require the obtaining ... of evidence"); *Herb Hallman Chevrolet, Inc. v. Nash–Holmes,* 169

F.3d 636, 643 (9th Cir.1999) (when the majority of the investigation had been conducted by the time the grand jury was impaneled, the fact that the prosecutor interviewed other witnesses after impaneling grand jury did not preclude him from being protected by absolute immunity); *Freeman ex rel. The Sanctuary v. Hittle,* 708 F.2d 442, 443 (9th Cir.1983) (per curiam) (holding that the prosecutor was absolutely immune to civil suit for damages when the investigator, acting under the authority of the district attorney's office, told the plaintiff's landlord that he was not getting as much rent from plaintiff's lease as he could get from someone else, because the investigator was performing an investigative function pursuant to the preparation of the prosecutor's case and within the scope of the prosecutor's duties in initiating and pursuing the state's case).

■ However, even after the initiation of criminal proceedings, a prosecutor may receive only qualified immunity when acting in a capacity that is exclusively investigatory or administrative. *See, e.g., Buckley,* 509 U.S. at 274 n. 5, 113 S.Ct. 2606 (stating that "[o]f course, a determination of probable cause does not guarantee a prosecutor absolute immunity from liability for all actions taken afterwards. Even after that determination, as the opinion dissenting in part, points out, a prosecutor may engage in 'police investigative work' that is entitled to only qualified immunity") (citation omitted); *Guzman–Rivera v. Rivera–Cruz,* 55 F.3d 26, 28 (1st Cir.1995) (holding that the prosecutors were not "entitled to absolute immunity for any delays or inadequacies in their conduct of the investigation" after § 1983 plaintiff had been convicted, but that "they [were] absolutely immune for their *post*-investigation failure to go into court to seek Guzman's release"); *Houston v. Partee,* 978 F.2d 362, 367 (7th Cir.1992) (holding that when prosecutors who, after conviction of criminal defendant, acting solely as investigators, acquired and withheld exculpatory evidence after their role in the prosecution had ended are "not entitled to any more immunity than the defendant police officers"); *Robichaud v. Ronan,* 351 F.2d 533, 535 (9th Cir.1965) (holding that prosecutors who, soon after arrest of suspect, allegedly directed police to coerce confession from suspect, were not entitled to absolute immunity because interrogation is ordinarily a police activity).

■ "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). To determine whether a state law enforcement officer or a prosecutor is entitled to qualified, as opposed to absolute, immunity a court must decide whether the alleged unconstitutional conduct occurred during the performance of an investigative function. Examples of when a law enforcement officer performs an investigative function include gathering physical evidence and conducting interrogations to determine whether a crime has been committed and whether probable cause exists to arrest a suspect. *See, e.g., Buckley,* 509 U.S. at 273–74, 113 S.Ct. 2606 (stating that "the detective's role [is] searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested"); *Franklin v. Fox,* 312 F.3d 423, 438–39 (9th Cir.2002) (granting qualified immunity to police officers who reasonably believed there was probable cause to arrest the plaintiff); *Burge v. Parish of St. Tammany,* 187 F.3d 452, 478 (5th Cir.1999)

(explaining that it is the role of an investigator to "obtain evidence prior to indictment").

■ Once probable cause to arrest someone is established, however, a law enforcement officer is not "required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent." *Baker*, 443 U.S. at 145–46, 99 S.Ct. 2689. In *Devereaux*, 263 F.3d at 1075, we applied this principle in a sexual abuse case in the following passage:

We are also persuaded, however, that there is no constitutional due process right to have child witnesses in a child sexual abuse investigation interviewed in a particular manner, or to have the investigation carried out in a particular way. Interviewers of child witnesses of suspected sexual abuse must be given some latitude in determining when to credit witnesses' denials and when to discount them, and we are not aware of any federal law—constitutional, decisional, or statutory—that indicates precisely where the line must be drawn. *See generally Myers v. Morris,* 810 F.2d 1437, 1460–61 (8th Cir.1987) (discussing in detail this "grey area of investigative procedure as to which there were, and probably still are, less than clearly established legal norms"). *Cf. Idaho v. Wright,* 497 U.S. 805, 819, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990) (noting, in a Confrontation Clause context, that "[a]lthough the procedural guidelines propounded by the court below may well enhance the reliability of out-of-court statements of children regarding sexual abuse, we decline to read into the Con-

frontation Clause a preconceived and artificial litmus test for the procedural propriety of professional interviews in which children make hearsay statements against a defendant"). Consequently, mere allegations that Defendants used interviewing techniques that were in some sense improper, or that violated state regulations, without more, cannot serve as the basis for a claim under § 1983.

The Sixth Circuit has also concluded that, "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers v. Schebil,* 188 F.3d 365, 371 (6th Cir.1999). An officer is not entitled to a qualified immunity defense, however, where exculpatory evidence is ignored that would negate a finding of probable cause. *Kuehl v. Burtis,* 173 F.3d 646, 651 (8th Cir.1999).

## III

This is a troubling case. Appellants were imprisoned for eight years based on the testimony of a child who subsequently testified that his accusations of sexual abuse were false. In their first amended complaint, Appellants accuse the sheriff's deputy and the prosecutor who presented the evidence against them at trial of violating their federal constitutional rights. The complaint set forth many of the facts in a conclusory form [3] and failed to set forth the dates of occurrence. A more detailed statement of the facts with indications of whether they occurred before arrest on these charges would enable the court to make a determination of whether the complaint states one or more claims for relief.

**3.** The portion of Appellants' complaint that set forth the facts of the case included statements such as: statements by Broam's son were "so outrageous as to be unbelievable on their face"; Broam's son's statements were "wildly inconsistent"; "preventing Dr. Nielsen from conducting his psychological evaluation of the victim, specifically and directly violated Plaintiffs' Constitutional rights to due process of law under the Fifth Amendment."

In reviewing the dismissal of a complaint for failure to state a claim upon which relief could be granted, we must determine de novo whether the plaintiff can prove some set of facts in support of the claim that would entitle him or her to relief. *Lewis v. Tel. Employees Credit Union,* 87 F.3d 1537, 1545 (9th Cir.1996). In this case it may be possible that a complaint, free from conclusory allegations, can withstand a motion to dismiss pursuant to Rule 12(b)(6).

The first amended complaint does not indicate the dates for any of the alleged unconstitutional acts. For example, it is unclear when Ingram interviewed Broam's son, when Ingram learned that Privet was a potentially exculpatory witness for the defense, and when Bogan instructed Ingram to be present when Broam's son was scheduled to be interviewed by Dr. Nielsen. Thus, we cannot determine whether the alleged constitutional violations were committed before or after Ingram concluded that probable cause existed to arrest Broam and Manning. If these events occurred *after* probable cause existed to arrest Appellants, and Ingram and Bogan's activities were quasi-judicial in nature, they would be protected by absolute immunity. *See Freeman,* 708 F.2d at 443 (concluding that absolute immunity can extend to investigations made at the behest of prosecutors). However, if these events occurred *before* probable cause was established, only qualified immunity would apply, and a Rule 12(b)(6) dismissal would not be appropriate regarding the claims based on this conduct.

The first amended complaint also fails to allege whether the taping of Appellants' conversations occurred before or after their arrest for sexually abusing Broam's son, or whether they were in custody because of an unrelated offense. If Broam and Manning were in custody based on Broam's son's accusations, Ingram is immune from liability because he had no duty to disclose the taped conversations to Appellants. *See, e.g., Walker v. City of New York,* 974 F.2d 293, 299 (2d Cir.1992) (stating that the duty of the police is only to turn evidence over to the prosecutor, who is then "charged with the task of determining which evidence constitutes *Brady* material that must be disclosed to the defense"); *McMillian v. Johnson,* 88 F.3d 1554, 1567 (11th Cir.1996) ("Investigators satisfy their obligations under *Brady* when they turn exculpatory and impeachment evidence over to the prosecutors.").

Whether Bogan is liable for his instruction to Ingram not to interview Privet, or his decision not to place the tapes in the investigation file, depends upon the function he was performing at the time the conduct occurred. He is absolutely immune from liability for damages if he was gathering evidence to present to the trier of fact. *See Ybarra,* 723 F.2d at 679.

Bogan and Ingram would be protected only by qualified immunity, however, if they were conducting an investigation to determine whether probable cause existed to arrest Broam and Manning. *See, e.g., Powers v. Coe,* 728 F.2d 97, 103 (2d Cir. 1984) (determining that, "when a prosecutor engages in or authorizes and directs illegal wiretaps" and "the wiretapping is ... investigative in nature," the prosecutors are only "entitled to qualified, rather than absolute, immunity"); *Jacobson v. Rose,* 592 F.2d 515, 524 (9th Cir.1978) (holding that, when prosecutors "joined in implementing the wiretap," they engaged in an act that was ordinarily related to police activity and were not entitled to absolute immunity); *Guerro v. Mulhearn,* 498 F.2d 1249, 1255–56 (1st Cir.1974) (refusing to dismiss plaintiff's complaint because it could be read to be read "as alleging that the Worcester police officers

acted in bad faith in knowingly obtaining the wiretap order ... and that the Worcester district attorney and the state police officers cooperated with them in these ventures" and that therefore it was not appropriate to apply the test for official immunity at the Rule 12(b)(6) stage of the proceedings (footnote omitted)).

### CONCLUSION

After reviewing the first amended complaint, we conclude that appellants may be able to amend their complaint further to plead facts that will state constitutional claims against Bogan and Ingram upon which relief can be granted. Accordingly, we conclude that the interests of justice would be served by permitting Appellants another chance to do so. Therefore, we **REVERSE** the district court's dismissal of Appellants' complaint and **REMAND** this matter to the district court with instructions to allow Appellants to amend their complaint.