# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THOMAS LEE GOLDSTEIN,
                    *Plaintiff-Appellee,*

v.

CITY OF LONG BEACH; COUNTY OF
LOS ANGELES; JOHN HENRY MILLER;
WILLIAM COLLETE; LOGAN WREN;
and WILLIAM MACLYMAN,
                    *Defendants,*

and

JOHN VAN DE KAMP and CURT
LIVESAY,
                    *Defendants-Appellants.*

No. 06-55537

D.C. No.
CV 04-09692-AHM

OPINION

Appeal from the United States District Court
for the Central District of California
A. Howard Matz, District Judge, Presiding

Argued and Submitted
March 5, 2007—Pasadena, California

Filed March 28, 2007

Before: Stephen Reinhardt and Robert R. Beezer,
Circuit Judges, and Thelton E. Henderson,* District Judge.

Opinion by Judge Henderson

---

*The Honorable Thelton E. Henderson, Senior United States District
Judge for the Northern District of California, sitting by designation.

**COUNSEL**

Steven J. Renick, Manning & Marder, Kass, Ellrod, Ramirez LLP, Los Angeles, California, for the defendants-appellants.

Ronald O. Kaye, David S. McLane, Marilyn E. Bednarski, Kaye, McLane & Bednarski, LLP, Pasadena, California, for the plaintiff-appellee.

**OPINION**

HENDERSON, District Judge:

In this case, we are asked to determine whether an elected district attorney and his chief deputy are entitled to absolute immunity from suit based on allegations that they failed to develop policies and procedures, and failed to adequately train and supervise their subordinates, to fulfill their constitutional obligation of ensuring that information regarding jail-house informants was shared among prosecutors in their

office. *See Giglio v. United States*, 405 U.S. 150, 154 (1972). For the reasons discussed in this opinion, we hold that they are not, and we therefore affirm the opinion of the district court.

## I.  Background

After serving twenty-four years in prison, Plaintiff-Appellee Thomas Lee Goldstein was released on April 2, 2004, following this Court's affirmance of the district court's order granting Goldstein's petition for habeas relief. Goldstein has now filed a complaint seeking damages under 42 U.S.C. § 1983 based on his wrongful conviction for murder. Although he has sued several individuals and entities, including the City of Long Beach, the County of Los Angeles, and four officers of the Long Beach Police Department, only his claims against Defendants-Appellants John Van De Kamp and Curt Livesay are at issue in this appeal.[1] Van De Kamp was the Los Angeles County District Attorney at the time Goldstein was prosecuted and convicted, and Livesay was his chief deputy.

The claims relevant to this appeal stem from the testimony at Goldstein's 1980 criminal trial of Edward Floyd Fink, a jailhouse informant. Fink testified that Goldstein confessed the murder to him while both were being detained in the Long Beach City Jail. Goldstein alleges that this testimony was false, as was Fink's testimony that he was not receiving any benefits for testifying against Goldstein and had never received any benefits for assisting law enforcement in the past. Fink had, in fact, been acting as an informant for the Long Beach Police Department for several years and had received multiple reduced sentences in return. Although other

[1]A different panel of this Court affirmed the district court's denial of a motion to dismiss brought by the County of Los Angeles. *Goldstein v. City of Long Beach*, 2006 WL 3206148, Case No. 05-56243 (9th Cir. Nov. 6, 2006).

deputy district attorneys in the Los Angeles County District Attorney's Office were aware of the benefits provided to Fink in exchange for his testimony against Goldstein, this critical impeachment evidence was never shared with the deputy district attorneys prosecuting Goldstein's case, allegedly because no system of sharing such information existed in the District Attorney's Office at the time and because deputy district attorneys were not adequately trained or supervised to share such information. As a result, evidence that could have been used to impeach Fink was not shared with Goldstein's defense counsel, in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Several years prior to Goldstein's arrest and conviction, the Supreme Court explained that prosecutors' offices have a constitutional obligation to establish "procedures and regulations . . . to insure communication of all relevant information on each case [including promises made to informants in exchange for testimony in that case] to every lawyer who deals with it." *Giglio*, 405 U.S. at 154. Thus, Goldstein alleges that Van De Kamp and Livesay are liable under § 1983 because, as administrators of the Los Angeles County District Attorney's Office, they violated his constitutional rights by purposefully or with deliberate indifference failing to create a system that would satisfy this obligation. Goldstein further alleges that Van De Kamp and Livesay violated his constitutional rights by failing to adequately train and supervise deputy district attorneys to ensure that they shared information regarding jailhouse informants with their colleagues.

Van De Kamp and Livesay sought dismissal of the claims against them, under Federal Rule of Civil Procedure 12(b)(6), based on an assertion of absolute prosecutorial immunity. The district court denied their motion on March 8, 2006, finding that Van De Kamp and Livesay's alleged conduct was administrative rather than prosecutorial and, therefore, not entitled to the protections of absolute immunity. Van De Kamp and

Livesay filed a timely notice of interlocutory appeal on April 5, 2006.

## II. Jurisdiction and Standard of Review

Although we do not generally have jurisdiction over interlocutory appeals of denials of motions to dismiss, we do have jurisdiction over such appeals where the district court denied a claim of absolute immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). Such denials are immediately appealable because "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action," an entitlement that "is effectively lost if a case is erroneously permitted to go to trial." *Id.* at 525-26.

Whether a public official is entitled to absolute immunity is a question of law that is reviewed de novo. *Botello v. Gammick*, 413 F.3d 971, 975 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 1419 (2006). Because this appeal stems from a ruling on a motion to dismiss for failure to state a claim, we assume all factual allegations in the complaint to be true. *Id.*

In addition, "[t]o decide whether absolute immunity applies, we assume without deciding that [Goldstein] has alleged a deprivation of a constitutional right under § 1983." *Genzler v. Longanbach*, 410 F.3d 630, 643-44 (9th Cir. 2005), *cert. denied*, 126 S. Ct. 737 (2005) (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 261 (1993)). Whether the alleged conduct is sufficient to state a claim for liability under § 1983 is therefore not before the Court at this time.

## III. Discussion

Courts have recognized two types of immunity from suit under 42 U.S.C. § 1983: qualified immunity and absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993). Only absolute immunity is at issue in this appeal, as Van De Kamp and Livesay failed to make an alternative argument in

the district court that the claims against them should be dismissed based on qualified immunity.

**[1]** As its name implies, absolute immunity is an absolute bar to liability. Qualified immunity, on the other hand, shields officials from suits for damages only when their alleged conduct either does not violate a constitutional right or violates a constitutional right that was not "clearly established," meaning that a reasonable person in the official's position would not have known "his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

"The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486-87 (1991). The official seeking absolute immunity therefore bears the burden of demonstrating that it is warranted, and the Supreme Court has been "quite sparing in its recognition of claims to absolute official immunity." *Forrester v. White*, 484 U.S. 219, 224 (1988).

**[2]** A prosecutor is entitled to absolute immunity under § 1983 for conduct that is "intimately associated with the judicial phase of the criminal process," *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976), and "occur[s] in the course of his [or her] role as an advocate for the State," *Buckley*, 509 U.S. at 273. However, conduct is not shielded by absolute immunity simply because it is performed by a prosecutor. *Id.* To the contrary, a prosecutor is entitled only to qualified immunity "if he or she is performing investigatory or administrative functions, or is essentially functioning as a police officer or detective." *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003) (citing *Buckley*, 509 U.S. at 273). Thus, when determining whether absolute immunity applies, courts must examine "the nature of the function performed, not the identity of the actor who performed it." *Forrester*, 484 U.S. at 229.

Applying this functional analysis, the Supreme Court has held that prosecutors are absolutely immune from § 1983 lia-

bility for decisions to initiate a particular prosecution, to present knowingly false testimony at trial, and to suppress exculpatory evidence. *Imbler*, 424 U.S. at 431 & n.34. Prosecutors also enjoy absolute immunity for decisions not to prosecute particular cases, *Roe v. City & County of San Francisco*, 109 F.3d 578, 583-84 (9th Cir. 1997), and for gathering evidence to present to the trier of fact, as opposed to gathering evidence to determine whether probable cause exists to arrest, *Broam*, 320 F.3d at 1033.

On the other hand, prosecutors do not have absolute immunity "for advising police officers during the investigative phase of a criminal case, performing acts which are generally considered functions of the police, acting prior to having probable cause to arrest, or making statements to the public concerning criminal proceedings." *Botello*, 413 F.3d at 976-77 (citing *Burns*, 500 U.S. at 493, and *Buckley*, 509 U.S. at 274-78). Nor do government officials have absolute immunity "for conduct involving termination, demotion and treatment of employees." *Id.* at 976 (citing *Forrester*, 484 U.S. at 228-30, and *Meek v. County of Riverside*, 183 F.3d 962, 967 (9th Cir. 1999)). For example, we have held that absolute immunity does not apply to a District Attorney's decisions to demote or fail to promote a deputy attorney, to reassign the deputy to a different department, or to bar the deputy from prosecuting any future murder cases. *Ceballos v. Garcetti*, 361 F.3d 1168, 1184 (9th Cir. 2004), *rev'd on other grounds*, 126 S. Ct. 1951 (2006). Unlike the removal of a deputy attorney from a particular case, which falls "within the District Attorney's prosecutorial function" because it is "intimately associated with the judicial phase of the criminal process," we determined that these challenged actions were "personnel decisions" falling "squarely within the District Attorney's administrative function. Even the decision not to reassign Ceballos to future murder cases was a personnel decision, and was unrelated to any particular prosecution or ongoing judicial proceeding." *Id.* (citing *Broam*, 320 F.3d at 1028).

**[3]** Neither the Supreme Court nor this Court has considered whether claims regarding failure to train, failure to supervise, or failure to develop an office-wide policy regarding a constitutional obligation, like the one set forth in *Giglio*, are subject to absolute immunity. The closest we have come was in *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675 (9th Cir. 1984), a case involving allegations that a supervising district attorney was "liable under § 1983 for failure to train his subordinate . . . to preserve exculpatory evidence, or in the alternative, for permitting a policy of not preserving exculpatory evidence to exist in the District Attorney's Office." *Id.* at 680. We held that the district attorney would enjoy absolute prosecutorial immunity for any allegations based on his direct involvement in the plaintiff's case. *Id.* However, we did not reach the question of whether absolute immunity would similarly protect the district attorney on the supervisory claim or on the claim that he failed to develop an appropriate policy because we concluded that the evidence "fail[ed] to give rise to any inference" that the district attorney did not adequately train or supervise his subordinates, or that he failed to develop an appropriate policy of preserving evidence. *Id.* at 680-81.

We also considered supervisory liability of a district attorney in *Genzler*, 410 F.3d 630. In that case, we held that, like prosecuting attorneys with direct responsibility for a case, supervisory defendants are entitled to absolute immunity for "conduct closely related to prosecutorial decisions in the trial phase of [the plaintiff's] case," such as a claim "that the supervisory defendants knew that [the prosecuting attorney] had granted [a witness] immunity in exchange for perjured testimony favorable to the prosecution," or a claim "that the supervisory defendants were aware of and condoned a ploy to use [a witness's] perjured testimony to force the recusal of [the plaintiff's] counsel of choice." *Id.* at 644.

However, unlike the plaintiff in *Genzler*, Goldstein does not contend that Van De Kamp and Livesay are liable because

they knew about, condoned, or directed any specific trial decisions made by the deputy district attorneys prosecuting Goldstein's criminal case. Goldstein does not, for instance, assert that Van De Kamp and Livesay knew that Fink had been granted immunity for perjured testimony in Goldstein's particular case, or that they condoned withholding such information from Goldstein's criminal defense attorney. Instead, Goldstein rests his theory of liability on Van De Kamp and Livesay's alleged failure to develop a policy of sharing information regarding jailhouse informants within the District Attorney's Office and on their alleged failure to provide adequate training and supervision on this issue.

[4] Van De Kamp and Goldstein are correct that our holding in *Roe*, 109 F.3d 578, establishes that absolute immunity protects not only decisions made during an individual prosecution but may also apply to a policy decision. However, they reach too broadly in urging us to apply *Roe* to this case. *Roe* concerned challenges to a policy not to prosecute cases without corroborating evidence where a particular police officer was the sole witness to the alleged offense. *Id.* at 582. We held that a decision not to prosecute was intimately associated with the judicial phase of the criminal process and, therefore, entitled to absolute immunity, and we agreed with the Court of Appeals for the District of Columbia Circuit that "there is 'no meaningful distinction between a decision on prosecution in a single instance and decisions on prosecutions formulated as a policy for general application.' " *Id.* at 583 (quoting *Haynesworth v. Miller*, 820 F.2d 1245, 1269 (D.C. Cir. 1987)).

[5] The determinative factor in *Roe* was that the challenged policy involved the discretionary decision of whether Roe was a credible enough witness so that prosecutors could "prosecute his cases without corroborating evidence in good conscience or with a reasonable expectation of winning a conviction. . . . This kind of witness evaluation falls entirely within a prosecutor's judicial function regardless of whether

one case or a line of cases is at issue." *Id.* at 584. Similarly, the challenged policy in *Haynesworth* also related to an alleged policy regarding which cases to prosecute: "Appellants aver that they were victimized by a policy of retaliatory prosecution — a practice of pursuing criminal charges against individuals who have endured wrongful arrests, solely because they refuse to waive civil suits against the arresting officers." *Haynesworth*, 820 F.2d at 1247. Thus, while *Roe* and *Haynesworth* demonstrate that a policy decision *may* be protected by absolute immunity, the critical factor remains the nature of the challenged policy and whether it falls "within a prosecutor's judicial function" or, instead, is part of a prosecutor's exercise of administrative or investigative functions. *Roe*, 109 F.3d at 584.

**[6]** In this case, Van De Kamp and Livesay contend that the challenged conduct was prosecutorial in function even if it may have been administrative in form. We disagree. In the context of determining whether absolute immunity applies, "prosecutorial" refers only to conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430. Thus, an act is not "prosecutorial" simply because it has some connection with the judicial process or may have some impact at the trial level. Were that the rule, then prosecutors would be absolutely immune from any suit because all actions taken by prosecutors arguably have some connection to the judicial process — even those, such as personnel decisions, that we have explicitly held fall outside the protections of absolute immunity. *E.g., Ceballos*, 361 F.3d at 1184. As the Supreme Court has cautioned, "[a]lmost any action by a prosecutor, including his or her direct participation in a purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive." *Burns*, 500 U.S. at 495.

**[7]** While it may be possible for an act to be prosecutorial in function but administrative in form, we need not decide

whether such conduct would be entitled to absolute immunity because we conclude that Goldstein's allegations are administrative and not prosecutorial in function.[2] Van De Kamp and Livesay correctly argue that the specific duty to share information regarding jailhouse informants arose only because of their roles as prosecutors. However, although the challenged conduct may thus be "to some degree related to trial preparation," Van De Kamp and Livesay have failed to demonstrate the required "close association . . . [with] the judicial phase of [Goldstein's] criminal trial," *Genzler*, 410 F.3d at 643, or to clearly established prosecutorial functions such as deciding whether to prosecute a particular case. *See also Burns*, 500 U.S. at 495 (requiring courts to "inquire whether the prosecutor's actions are closely associated with the judicial process"); *Imbler*, 424 U.S. at 430 (requiring that the conduct be "intimately associated with the judicial phase of the criminal process"). Administrative work cannot be "retroactively transform[ed]" into the prosecutorial simply because "the evidence this work produced" might affect whether a prosecutor decides to bring a case or, if a case is brought, how the evidence is presented at trial. *Buckley*, 509 U.S. at 275-76. The allegations against Van De Kamp and Livesay, which involve

---

[2]We note that the Courts of Appeals for the Second and Third Circuits reached similar conclusions, albeit in a different context, in *Walker v. City of New York*, 974 F.2d 293 (2d Cir. 1992) and *Carter v. City of Philadelphia*, 181 F.3d 339 (3d Cir. 1999). Both cases involved challenges to a municipality's liability, which in turn involved questions of whether the alleged conduct was prosecutorial or administrative in function. The Second Circuit held that allegations regarding a "decision not to supervise or train [assistant district attorneys] on *Brady* and perjury issues" raised challenges to the district attorney's "acts as the manager of the district attorney's office" rather than to the district attorney's actions " 'in a quasi-judicial capacity.' " *Walker*, 974 F.2d at 301 (quoting *Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988)). Similarly, the Third Circuit held that "policies relating to training, supervision and discipline" involved "not prosecutorial, but administrative" functions. *Carter*, 181 F.3d at 353; *see also id.* at 355-56 (declining to apply absolute prosecutorial immunity because the challenged conduct was "administrative, rather than prosecutorial").

their failure to promulgate policies regarding the sharing of information relating to informants and their failure to adequately train and supervise deputy district attorneys on that subject, bear a close connection only to how the District Attorney's Office was managed, not to whether or how to prosecute a particular case or even a particular category of cases.[3] Consequently, the challenged conduct is not prosecutorial in function and does not warrant the protections of absolute immunity.

## IV.   Conclusion

For the above reasons, we hold that the district court correctly determined that Goldstein's allegations against Van De Kamp and Livesay describe conduct in furtherance of an administrative rather than prosecutorial function. Van De Kamp and Livesay have therefore failed to meet their burden of demonstrating that the allegations against them are so "intimately associated with the judicial phase of the criminal process" that absolute immunity is warranted. *Imbler*, 424 U.S. at 430. Accordingly, the decision of the district court is **AFFIRMED.**

---

[3]Thus, we need not and do not decide whether a policy decision regarding how to prosecute a particular category of cases would be protected by absolute immunity.