[No. B159449. Second Dist., Div. Six. Apr. 21, 2003.]

In re CHRISTOPHER CAPISTRAN on Habeas Corpus.

## COUNSEL

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Paul D. Gifford, Assistant Attorney General, Julie L. Garland, Susan Duncan Lee and Heather Bushman, Deputy Attorneys General, for Appellants Gray Davis, Governor of the State of California, and Jim Hamlet, Warden, Correctional Training Facility.

Rowan K. Klein, under appointment by the Court of Appeal, and Keith Wattley for Respondent Christopher Capistran.

## OPINION

PERREN, J.—In *In re Rosenkrantz* (2002) 29 Cal.4th 616, 676-677 [128 Cal.Rptr.2d 104, 59 P.3d 174], our Supreme Court held that the Governor's decision to deny parole will not be disturbed if supported by "some evidence." But, in reaching that conclusion a reviewing court must also be satisfied that the Governor's decision was based on the same factors "which the parole authority is required to consider." (Cal. Const., art. V, § 8, subd. (b) (hereafter Article V, section 8(b).) Here we conclude that the report of the Governor required by Article V, section 8(b) was, in part, based upon facts for which there was not "some evidence," and that the Governor failed to make an individualized consideration of the same factors upon which the Board of Prison terms (hereafter the Board) relied.

In 1985, Christopher Capistran was convicted of second degree murder and sentenced to an indeterminate term of 15 years to life in state prison. In 1999, the Board found that he was suitable for parole and set a parole date. After Governor Gray Davis reversed the Board's decision, Capistran filed a petition for a writ of habeas corpus. The trial court granted the petition and directed the Board to set a parole date. The Governor and Jim Hamlet, Warden of the Correctional Training Facility, appeal.

Because we conclude that the Governor's decision does not comply with Article V, section 8(b), writ relief is appropriate. We agree with the Governor and the Warden, however, that the trial court erred in ordering Capistran's release. On remand, the Governor shall be ordered to vacate the decision and thereafter to proceed to review the Board's decision in accordance with due process of law. (*In re Rosenkrantz, supra,* 29 Cal.4th at p. 658.)

### FACTS AND PROCEDURAL HISTORY

#### I.

### *The Conviction Offense*

In September 1984, 17-year-old Capistran and approximately 14 members of the Santa Maria street gang approached victim Joey Padilla and his friend, both of whom were members of the rival Guadalupe gang, in a Santa Maria parking lot. Capistran initiated a fight by striking Padilla in the face. In the ensuing melee, Padilla was stabbed 15 times and subsequently died. Capistran reportedly bragged about the crime to others and was arrested after he and his accomplices drove past the crime scene. At the time of his arrest, he was wearing clothing that was stained with Padilla's blood.

#### II.

### *The Board's Decision*

On July 19, 1999, the Board held a parole hearing and found Capistran suitable for parole. The Board reasoned that Capistran "has enhanced his ability to function within the law upon release through participation in educational programs, self-help and therapy programs, vocational programs and institutional job assignments. He also lacks a significant criminal history of violent crime. . . . He has realistic parole plans which include a job offer and family support. . . . And he has recently maintained positive institutional behavior which indicates significant improvement in self-control.

Also, he shows signs of remorse. He indicated that he understands the nature and magnitude of the offense and accepts responsibility for the criminal behavior . . . ." The Board also referred to a psychological report prepared in May 1998, indicating that Capistran "has made some significant and positive changes in his life which will result in his being a much different person and a contributory citizen upon his release." In concluding, one of the commissioners noted, "I think you've done an extraordinary job. You started off at a very early age. You didn't commit the act of stabbing the person to death. There are a lot of things in your favor and I hope that other people in the legal review process recognize that and allow you that second chance that you asked for. You deserve it."

The Board's decision was affirmed by the decision review unit on November 2, 1999.

## III.

### *The Governor's Decision*

On November 18, 1999, the Governor issued his decision reversing the Board's decision to parole Capistran. The Governor's report to the Legislature provided, in its entirety: "Early on the morning of September 3, 1984, in a Santa Maria parking lot, victim Joey Padilla and one of his friends, both members of the 'Guadalupe' gang, found themselves surrounded by approximately fifteen members of the hostile 'Santa Maria' gang. After insults were exchanged, Mr. Capistran struck Joey Padilla in the face. This started a brutal attack on the two victims by the fifteen or so rival gang members. During the fight, Joey Padilla was stabbed fifteen times, including a fatal stab wound to the heart. Mr. Padilla died approximately three hours later. [¶] Mr. Capistran is reported to have bragged about how much he and the others had hurt Mr. Padilla. Capistran and his friends were arrested when they drove past the crime scene. After his arrest, Mr. Capistran was discovered to have bloodstains on his pants, evidence that he was an active participant in this brutal assault. [¶] Moreover, Mr. Capistran exhibited violent behavior during the initial years of his imprisonment. He was disciplined for fighting, using force and violence with other inmates, and was cited for plotting with other inmates to kill a correctional officer in order to escape. [¶] The Santa Barbara District Attorney is opposed to parole for Mr. Capistran based on the extreme violence and circumstances of this crime. I agree with the District Attorney that Mr. Capistran has not served a sufficient term in prison for his active participation in this vicious murder. [¶] Due to the circumstances surrounding this very serious crime, I have grave concerns about releasing Mr. Capistran into the community. Upon

review of this matter, I REVERSE the Board of Prison Terms' decision that Mr. Capistran be paroled."

## IV.

### *The Habeas Corpus Petition*

On August 21, 2001, Capistran filed a petition for writ of habeas corpus challenging the Governor's decision. On May 31, 2002, the trial court granted the petition on the ground that the Governor's decision was not supported by some evidence in the record. The court concluded that the nature of Capistran's offense was insufficient by itself to justify the denial of parole, and noted that the Governor's statement that Capistran had been implicated in an escape plot was "an egregious misstatement of the record" because the record unequivocally reflected that Capistran was cleared of any involvement in the plot. The court also noted that the Governor had failed to discuss Capistran's positive institutional behavior and his expression of remorse, and referred to two different instances in 1998 when Capistran was commended by prison staff for committing heroic acts. In issuing the writ, the court ordered the Board to release Capistran subject to the previously imposed terms.

### DISCUSSION

"The petitioner in a habeas corpus proceeding bears the ultimate burden of proving the factual allegations that serve as the basis for his or her request for habeas corpus relief. [Citation.]" (*In re Rosenkrantz, supra*, 29 Cal.4th at p. 675.) In conducting our review of a trial court's order granting or denying habeas relief, "[w]e presume that the trial court accepted as true petitioners' undisputed factual allegations, including any undisputed matters contained in the exhibits incorporated by reference into his pleadings. [Citations.]" (*Id.* at p. 676.)

The trial court granted Capistran's petition for a writ of habeas corpus on its finding that the Governor had exceeded his authority in reversing the Board's decision to grant parole. The Governor's constitutional authority to conduct that review is set forth in Article V, section 8(b), which provides in full: "No decision of the parole authority of this State with respect to the granting, denial, revocation, or suspension of parole of a person sentenced to an indeterminate term upon conviction of murder shall become effective for a period of 30 days, during which the Governor may review the decision subject to procedures provided by statute. The Governor may only affirm, modify, or reverse the decision of the parole authority on

the basis of the same factors which the parole authority is required to consider. The Governor shall report to the Legislature each parole decision affirmed, modified, or reversed, stating the pertinent facts and reasons for the action." The statutory procedures governing this review are set forth in Penal Code section 3041.2 (hereafter section 3041.2), which states: "(a) During the 30 days following the granting, denial, revocation, or suspension by a parole authority of the parole of a person sentenced to an indeterminate prison term based upon a conviction of murder, the Governor, when reviewing the authority's decision pursuant to subdivision (b) of Section 8 of Article V of the Constitution, shall review materials provided by the parole authority. [¶] (b) If the Governor decides to reverse or modify a parole decision of a parole authority pursuant to subdivision (b) of Section 8 of Article V of the Constitution, he or she shall send a written statement to the inmate specifying the reasons for his or her decision."

In *In re Rosenkrantz, supra,* 29 Cal.4th at page 679, the California Supreme Court instructed that our review of the Governor's parole decisions pursuant to his constitutional and statutory authority "strictly is limited to whether some evidence supports the Governor's assessment of the circumstances of petitioner's crime—not whether the weight of the evidence conflicts with that assessment . . . ." The court also recognized, however, that Article V, section 8(b) and section 3041.2 "give rise to a protected liberty interest" in that "a prisoner granted parole by the Board has an expectation that the Governor's decision to affirm, modify, or reverse the Board's determination will be based upon the same factors the Board is required to consider." (*Rosenkrantz,* at p. 660.) Moreover, "this liberty interest underlying a Governor's parole review decisions is protected by due process of law." (*Id.* at p. 661.)

Due process thus requires the Governor's decision to "reflect an individualized consideration of the specified criteria" that also must be considered by the Board in making parole decisions. (*In re Rosenkrantz, supra,* 29 Cal.4th at p. 677.) The factors to be considered in determining parole suitability are set forth in title 15 of the California Code of Regulations, section 2402 (hereafter section 2402). For example, "the absence of serious misconduct in prison and participation in institutional activities that indicate an enhanced ability to function within the law upon release are factors that must be considered *on an individual basis* by the Governor in determining parole suitability. [Citations.]" (*Rosenkrantz,* at p. 682; § 2402, subd. (d)(9).) The Governor also must consider any evidence indicating that the prisoner has expressed remorse for his crimes, as well as any evidence demonstrating that "[t]he prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release." (§ 2402, subd. (d)(8).)

The Governor and the warden contend that some evidence supports the Governor's decision to deny parole because the circumstances of Capistran's conviction offense are sufficient by themselves to support the denial of parole. But, the Governor's decision does not purport to rely exclusively on the nature of Capistran's offense to justify the denial of parole. The decision also purports to rely on the facts that Capistran exhibited violent behavior in the initial years of his incarceration and had been disciplined for fighting and using force and violence against other inmates, and that he had been implicated in a plot to escape and kill a correctional officer. While it is true that Capistran was disciplined for breaking a window in 1988 and for an incident of fighting in 1989, the record unequivocally shows that Capistran was cleared of any involvement in the escape plot, which apparently took place in 1985. Because the Governor's decision purports to rely on facts regarding Capistran's institutional behavior that are not supported by some evidence, the decision cannot be sustained on the ground that the other aspects of the Governor's decision are supported by some evidence. (Cf. *In re Rosenkrantz, supra,* 29 Cal.4th at p. 677 [portion of Governor's decision not supported by some evidence disregarded where "the Governor's decision made clear that he would have reached the same conclusion regarding parole suitability" in its absence].)

In any event, although the nature of an offense *may* constitute some evidence sufficient to justify the denial of parole, it can only be so if the decision reflects an individualized consideration of all other factors relevant to parole suitability. (*In re Rosenkrantz, supra,* 29 Cal.4th at pp. 682-683.) We agree that the Governor's statement pertaining to the nature of Capistran's offense is supported by some evidence, but the decision makes no mention of Capistran's institutional behavior or other facts demonstrating that he is suitable for parole at this time. For example, in 1998 he was commended for committing an "exceptional and heroic act" by coming to the aid of another inmate who had been injured. That same year, he was also commended for preventing injury to a staff member by helping to restrain a psychotic inmate while performing his job duties as a radiology technician. He also has demonstrated excellent prospects for employment upon his release and drew high praise from prison staff for his work ethic and positive attitude. The Governor's decision further fails to acknowledge that Capistran has recently demonstrated remorse for his crimes.

Accordingly, we conclude that Capistran is entitled to writ relief. We disagree with the trial court, however, that Capistran is necessarily entitled to be released on parole at this time. ■ In *Rosenkrantz,* the Supreme Court instructed that in cases where the Board's findings are not supported by the record, "the court should grant the prisoner's petition for writ of

habeas corpus and should order the Board to vacate its decision denying parole and thereafter to proceed in accordance with due process of law." (*In re Rosenkrantz, supra,* 29 Cal.4th at p. 658.) ▅ The Governor and the Board possess equal discretion in reviewing parole suitability (*id.* at pp. 658-662), so the Governor should be ordered to vacate his decision reversing the Board's decision and may thereafter proceed in accordance with due process.

Capistran's claims that the Governor is biased against parole and has a blanket no-parole policy, as well as his contention that application of section 3041.2 to him violates the ex post facto clauses of the state and federal Constitutions, have been rejected by the California Supreme Court (*In re Rosenkrantz, supra,* 29 Cal.4th at pp. 637-652, 683-686), and we are bound by that decision (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]).

## DISPOSITION

The judgment granting Capistran's petition for writ of habeas corpus is affirmed. On remand, the trial court shall order the Governor to vacate his November 18, 1999, decision. The Board's decision to grant parole shall be deemed reinstated as of the date of the superior court's vacation order. The Governor, in his discretion, may thereafter issue a new decision pursuant to his authority under Article V, section 8(b), and section 3041.2.

Gilbert, P. J., and Coffee, J., concurred.