[No. A099191, A099293. First Dist., Div. Four. Nov. 13, 2003.]

In re BARNEY McCLENDON, on Habeas Corpus.

Counsel

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Paul D. Gifford and Frances T. Grunder, Assistant Attorneys General, Allen R. Crow, Daniel J. Kossick, Jennifer A. Neill and Pamela B. Hooley, Deputy Attorneys General, for Appellants.

Kathleen Kahn, under appointment by the Court of Appeal, for Petitioner.

## Opinion

**SEPULVEDA, J.**—Petitioner Barney McClendon is serving a prison sentence of 15 years to life for the 1981 murder of his wife, enhanced two years for firearm use in committing the offense. The Governor found that petitioner is unsuitable for parole and reversed a decision of the Board of Prison Terms (Board) approving parole. Petitioner sought judicial review of the Governor's denial of parole. The superior court found that the Governor's decision lacked evidentiary support and granted a petition for writ of habeas corpus ordering petitioner's release on parole. The superior court's order predated issuance of *In re Rosenkrantz*, in which our Supreme Court elucidated the standards for reviewing a decision by the Governor finding that a prisoner is unsuitable for parole. (*In re Rosenkrantz* (2002) 29 Cal.4th 616 [128 Cal.Rptr.2d 104, 59 P.3d 174].) Viewed under the proper review standards, the Governor's decision is supported by the evidence. Accordingly, we reverse the superior court's order releasing petitioner on parole.

### I.

### FACTS

The evidence submitted to the Board, and reviewed by the Governor and the superior court, established that petitioner shot and killed his estranged wife, Marcia McClendon, on July 28, 1981. Petitioner and his wife had been married, divorced, then remarried, and were in the process of a second divorce. They were living apart, in separate residences. Petitioner testified before the Board that he and his estranged wife had talked earlier in the day about meeting to discuss their relationship after she returned from a river outing with friends. When she had not contacted petitioner by about 6:30 p.m., he began drinking. Petitioner says that Marcia McClendon called him around 10:30 p.m. to apologize for not arranging a meeting with him. Petitioner, now drunk, decided to go see her anyway.

Petitioner arrived uninvited at Marcia McClendon's residence around midnight and walked in without knocking. He arrived at her residence

wearing rubber gloves and carrying a loaded handgun. He also brought with him a wrench and a bottle of industrial acid.

When petitioner entered the residence, his estranged wife and a man were sitting on the living room couch talking. Petitioner aimed the gun at the couple and shot his wife in the head. Petitioner chambered another round. The male guest, Jerry Bynum, jumped up and rushed petitioner. Petitioner's gun jammed, preventing him from firing more rounds. The men fought and petitioner struck Bynum in the head with the wrench. The police arrived in response to a report of a disturbance and found petitioner and Bynum fighting on the living room floor. The living room wall and Bynum's upper body were covered in blood. The police recovered the gun despite petitioner's efforts to conceal it under a cushion. Marcia McClendon died five hours later from the mortal gunshot wound to her head.

Petitioner expresses remorse for killing his wife, but denies that he planned or intended to kill her. Petitioner told the Board that he brought his new gun to her home "just to show it" to her, although he admitted that she had no interest in firearms. Petitioner also claimed that he brought the wrench to repair a child's bicycle and the acid to clean stains on the concrete. When questioned about bringing a wrench, acid, and gloves to his estranged wife's home in the middle of the night, petitioner claimed that he had laid out the items when he expected an earlier meeting and acted "by rote" in bringing them with him.

Petitioner has served his entire incarceration without disciplinary action. He has participated in Alcoholics Anonymous, self-improvement programs, and furthered his education. The Board evaluation report states that petitioner "has always, and continues to maintain an exemplary profile during his incarceration . . . . All records indicate that he has conformed to expectations while incarcerated and used his time productively."

## II.

## DISCUSSION

■ The People of California have vested their Governor with the power to override the Board's parole decisions in murder convictions. (Cal. Const., art. V, § 8, subd. (b).) The Governor may review decisions of the Board, and affirm, modify, or reverse the Board's decision on the "basis of the same factors which the parole authority is required to consider." (Cal. Const., art. V, § 8, subd. (b); Pen. Code § 3041.2.) Those factors include the nature and circumstances of the commitment offense and whether the inmate is remorseful and cognizant of the magnitude of his crime. (Cal. Code Regs., tit. 15, § 2402, subds. (c)(1) & (d)(3).)

■ Gubernatorial parole decisions are subject to *limited* judicial review. (*In re Rosenkrantz, supra,* 29 Cal.4th 616, 626.) "[A] court is authorized to review the factual basis of the Governor's decision only to determine whether it is supported by some evidence relevant to the factors the Governor is required to consider under article V, section 8(b) [of the California Constitution]." (*Ibid.*) Courts may not undertake an independent assessment of the merits of the parole decision, nor demand "substantial evidence" supporting a gubernatorial parole decision. (*Id.* at p. 665.) Judicial review of the Governor's parole decisions is "extremely deferential." (*Ibid.*) "Only a modicum of evidence is required," and "[r]esolution of any conflicts in the evidence and the weight to be given the evidence are matters within the authority of the Governor." (*Id.* at p. 677.)

## A. Basis for the Governor's Denial of Parole

Governor Gray Davis listed several factors in his decision reversing the Board's grant of parole to petitioner, including the grave nature of the offense and petitioner's failure to fully accept responsibility for his crime. The Governor observed that "[t]his was a bloody and senseless crime in which [petitioner] shot and killed his estranged wife and assaulted another individual with a wrench, seriously wounding him. In 1994—thirteen years after the attack—Mr. Bynum stated that his head still 'rings' from being struck. [¶] In addition, I am not convinced that [petitioner] has fully accepted responsibility for this crime. Throughout his incarceration, [petitioner] has downplayed his involvement in, and provided several different versions of, the life crime, including why he had brought the gun to his wife's apartment in the first instance." The Governor also noted that petitioner minimized his assault upon Bynum by responding to the Board's inquiry as to the victim's injuries with the statement that Bynum " 'received some scrapes, cuts, abrasions, as we both did.' "

## B. The Governor's Denial of Parole is Supported by the Evidence

The Governor's parole decision is supported by "some evidence relevant to the factors the Governor is required to consider under article V, section 8(b) [of the California Constitution]." (*In re Rosenkrantz, supra,* 29 Cal.4th at p. 626.) ■ The nature and circumstances of the commitment offense are relevant considerations in a parole decision, including whether the offense was calculated and whether it was perpetrated against multiple victims. (Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(A) & (B).) Indeed, "[t]he nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." (*In re Rosenkrantz, supra,* 29 Cal.4th at p. 682.)

■ Here, petitioner arrived at his estranged wife's home in the middle of the night wearing rubber gloves and carrying a handgun and wrench, which

he used to attack his wife and another victim. While petitioner denies any preexisting plan or intent to kill anyone, the circumstances suggest a calculated attack. Certainly, petitioner's suspicious conduct constitutes *some* evidence that he engaged in premeditation and deliberation. While petitioner was not convicted of premeditated murder, that fact "does not preclude the Governor from considering such evidence [of premeditation and deliberation] in exercising his discretion whether to reverse a Board decision granting parole." (*In re Rosenkrantz, supra,* 29 Cal.4th at p. 679.) We conclude that there is "some evidence" supporting the Governor's determination that the circumstances of the crime warranted a longer prison commitment than ordered by the Board.

■ Likewise, we conclude that there is "some evidence" supporting the Governor's determination that petitioner has failed to accept full responsibility for his crime. Contrary to petitioner's argument on appeal, he was not impermissibly denied parole for failing to admit guilt. (Pen. Code § 5011, subd. (b).) Petitioner admitted killing his wife, making his guilt uncontested. The factors properly considered by the Governor were petitioner's attitude toward the crime, and his lack of remorse and understanding of the nature and magnitude of the offense. (Cal. Code Regs., tit. 15, § 2402, subds. (b) & (d)(3).) Petitioner wore rubber gloves when he barged uninvited into his wife's home, wielding a gun and wrench that he used to kill his wife and bludgeon her companion. Petitioner maintains that he simply wanted to show his new gun to his estranged wife, and that the gloves, wrench, and industrial acid were brought for household chores. Petitioner's explanations may be true, and he certainly cannot be compelled to admit premeditation. However, there is at least some evidence that petitioner has not fully accepted responsibility for his actions in precipitating a deadly attack, even if his purpose in bringing a loaded gun with him was innocent.

■ Similarly, the Governor was free to regard petitioner's characterization of Bynum's injuries as "some scrapes, cuts, abrasions," as a demonstration that petitioner fails to apprehend the magnitude of his crime. Petitioner elsewhere concedes that he "probably would have tried" to shoot Bynum if petitioner's gun had not jammed, and does not deny that he struck Bynum in the head with the wrench two or three times. Bynum and the apartment wall were blood splattered when the police arrived. Despite these facts, and petitioner's acknowledgement of them, he still minimized Bynum's injuries when testifying before the Board. Petitioner's dismissal of Bynum's injuries as "some scrapes, cuts, abrasions," is "some evidence" that petitioner does not understand the magnitude of his offense.

C. *Gubernatorial Parole Decisions Need Not Itemize All Parole Suitability Factors*

Petitioner complains on appeal that the Governor's written parole decision does not discuss the factors favoring petitioner's release. ■ The Board, and the Governor in any review of a Board decision, must consider all available relevant and reliable information in determining suitability for parole, including the circumstances of the offense, criminal history, and behavior after the crime. (Cal. Const., art. V, § 8, subd. (b); Cal. Code Regs., tit. 15, § 2402, subd. (b).) Our Supreme Court has noted that the Governor's parole decision "must reflect an individualized consideration of the specified criteria" relevant to parole suitability. (*In re Rosenkrantz, supra,* 29 Cal.4th at p. 677.)

These principles have created disagreement in the intermediate appellate courts as to whether a gubernatorial parole decision must expressly discuss all factors relevant to parole suitability, both favorable and unfavorable. The Second District Court of Appeal vacated a gubernatorial parole decision for failing to mention the inmate's institutional behavior or other facts demonstrating suitability for parole. (*In re Capistran* (2003) 107 Cal.App.4th 1299, 1305–1306 [132 Cal.Rptr.2d 872].) The Third District Court of Appeal reached the opposite conclusion in ruling that the Governor is only required to provide a written statement of his reasons for his decision, and not a detailed analysis of every parole suitability factor. (*In re Morrall* (2002) 102 Cal.App.4th 280, 299–300 [125 Cal.Rptr.2d 391].)

We find *In re Morrall* the better reasoned authority. ■ The Governor is required to provide a written statement specifying his *reasons* for any reversal or modification of a Board decision; nothing in the California Constitution or statutes specifies that the Governor must provide a detailed written analysis of each parole suitability factor. (Cal. Const., art. V, § 8, subd. (b); Pen. Code, § 3041.2, subd. (b).) Nor may we infer that the Governor failed in his duty to consider all relevant, reliable information in determining suitability for parole because he did not discuss each factor. (Cal. Code Regs., tit. 15, § 2402, subd. (b).) ■ There exists a general presumption that official duty has been regularly performed. (Evid. Code, § 664.) Moreover, the Governor stated that he considered the same factors considered by the Board, and his statement of reasons for his parole decision shows a thorough understanding of petitioner's circumstances.

D. *Petitioner's Offense Was Comparatively More Egregious Than Other Second Degree Murders*

Petitioner also asserts on appeal that the Governor failed to consider the gravity and the public safety implications of petitioner's offense as it compares with other similar offenses, and in light of the minimum term prescribed for second degree murder, in violation of Penal Code section 3041.

Penal Code section 3041 is currently under review in our Supreme Court, which is considering whether the Board must engage in such a comparative proportionality analysis when denying parole on the basis that the offense is particularly egregious. (*In re Dannenberg* (2002) 102 Cal.App.4th 95 [125 Cal.Rptr.2d 458], review granted Jan. 15, 2003, S111029.) Petitioner asserts that both the Board and the Governor must engage in a comparative analysis when denying parole for egregious offenses. Assuming that petitioner is correct in his interpretation of Penal Code section 3041, we are satisfied that the Governor made his decision with an appreciation for the proportionality of petitioner's sentence and the gravity of the threat he poses to the public as compared with other murderers. This case differs from *In re Ramirez* (2001) 94 Cal.App.4th 549, 570 [114 Cal.Rptr.2d 381], where the record was devoid of any evidence that the offense was egregious as compared with similar offenses. The murder victim in *In re Ramirez* was a robbery accomplice who died in an automobile accident while fleeing the police. (*Id.* at pp. 552, 570–571.) In contrast, the record here contains evidence of premeditation, making the offense disproportionately egregious as compared with other second degree murders.

E. *Petitioner's Remaining Claims Have Been Rejected by the California Supreme Court*

Finally, we note that our Supreme Court has rejected petitioner's contentions that the Governor has an illegal "no parole" policy and that the gubernatorial review of Board decisions, enacted after the time of petitioner's offense, violates the prohibition against ex post facto legislation. (*In re Rosenkrantz, supra,* 29 Cal.4th at pp. 636–652, 683–686.) Petitioner's proffered evidence of statistics demonstrating the prevalence of gubernatorial reversals of Board parole grants does not prove a policy of blanket parole denials. (*Id.* at pp. 685–686.)

### III.

### CONCLUSION

The superior court order granting petitioner Barney McClendon's petition for a writ of habeas corpus and ordering his release from prison is reversed.

This court's order dated September 3, 2002, staying petitioner's release from prison, shall dissolve upon issuance of the remittitur.

This court's order, dated December 26, 2002, staying a scheduled parole suitability hearing, shall dissolve upon issuance of the remittitur.

Kay, P. J., and Reardon, J., concurred.

Petitioner's petition for review by the Supreme Court was denied March 3, 2004. Brown, J. did not participate therein.