**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DONALD A. MILLER,
　　　　　*Plaintiff-Appellant,*

　　　　v.

GRAY DAVIS, as an individual,
　　　　　*Defendant-Appellee.*

No. 06-55538

D.C. No.
CV-05-02625-FMC

OPINION

Appeal from the United States District Court
for the Central District of California
Florence Marie Cooper, District Judge, Presiding

Argued and Submitted
December 5, 2007—San Francisco, California

Filed April 2, 2008

Before: Dorothy W. Nelson and Stephen Reinhardt,
Circuit Judges, and Louis F. Oberdorfer,* Senior Judge.

Opinion by Judge Reinhardt

---

*The Honorable Louis F. Oberdorfer, Senior United States District
Judge for the District of Columbia, sitting by designation.

**COUNSEL**

Richard Hamlish, Westlake Village, California, for the plaintiff-appellant.

Bill Lockyer, Attorney General for the State of California; James M. Humes, Chief Assistant Attorney General; Frances T. Grunder, Senior Assistant Attorney General; and Thomas Patterson and Rene L. Lucaric, Supervising Deputy Attorneys General, for defendants-appellees Davis, Schwarzenegger, Rich, Duncan, BPH, CDCR, Ortega, Gillis, Lushcough, Koenig, Bordonaro, and Bentley.

**OPINION**

REINHARDT, Circuit Judge:

The California Constitution authorizes the Governor to review a state parole board's decision granting, denying, revoking, or suspending parole "of a person sentenced to an indeterminate term upon conviction of murder." Cal. Const. art. V, § 8(b). We are asked to decide whether the Governor is entitled to absolute quasi-judicial immunity for his reversal of a parole board's grant of parole where he erroneously extends his authority to review parole decisions to an individual convicted of *conspiracy* to commit murder. We hold that he is. Accordingly, we affirm the district court's dismissal of the plaintiff's 42 U.S.C. § 1983 claims against former Governor Gray Davis.[1]

---

[1] We dispose of the remainder of Miller's claims in a separate memorandum disposition filed concurrently with this opinion.

## I. Background

In 1980, Donald Miller was convicted of conspiracy to commit murder and sentenced to 25 years to life in state prison. His first two applications for parole, filed in 1996 and 1998, were denied by the California Board of Prison Terms ("Board"). On February 18, 1999, the Board granted Miller's third application for parole and referred the decision to then-Governor Davis for review. Governor Davis reversed it. Miller applied for parole a fourth time and, on October 2, 2000, the Board again found him suitable for parole and again referred the decision to Governor Davis. Again, he reversed it.

On August 20, 2001, the California Court of Appeal vacated Governor Davis's reversal of the Board's grant of parole on the ground that the Governor lacked authority to review the Board's 1999 and 2000 parole decisions. Specifically, the court held that Article V, § 8 of the California Constitution, and § 3041.2 of the California Penal Code, which permit the Governor to review parole decisions of inmates "sentenced to an indeterminate term upon conviction of *murder*," Cal. Const. art. V, § 8(b) (emphasis added), do not authorize him to review parole decisions of inmates "whose primary commitment offense is *conspiracy* to commit murder" (emphasis added).

Following the state court's decision, the Board reaffirmed its prior grant of parole and set a parole release date of June 18, 2002. Pursuant to California Penal Code § 3041.1,[2] Governor Davis requested that the Board review its grant of parole. The Board met en banc and again reaffirmed its decision to grant Miller parole. He was released from prison on June 18, 2002.

---

[2]Section 3041.1 allows the Governor, "[u]p to 90 days prior to a scheduled release date," to request the "review of any decision by a parole authority concerning the grant or denial of parole to any inmate in a state prison." Cal. Penal Code § 3041.1.

In 2005, Miller filed this § 1983 action against former Governor Davis, current Governor Arnold Schwarzenegger, Warden William Duncan, several state agencies,[3] and a number of Board members, alleging that the defendants violated his constitutional rights in prolonging his incarceration. The district court dismissed the action as to all defendants. It held that the Governor's review of parole board decisions is a quasi-judicial function and is therefore entitled to absolute immunity. Although the Governor was not authorized to review Miller's parole decision because Miller was convicted not of murder but of conspiracy to commit murder, the district court construed the Governor's decision to conduct the review as a "mistake of law" and accorded him the protection of quasi-judicial immunity. Miller appealed.

## II.   Discussion

Miller argues that Governor Davis is not entitled to absolute quasi-judicial immunity for his reversals of Miller's 1999 and 2000 parole grants because he lacked jurisdiction to review the Parole Board's decisions. "Whether a public official is entitled to absolute immunity is a question of law that is reviewed de novo." *Goldstein v. City of Long Beach*, 481 F.3d 1170, 1172 (9th Cir. 2007).

**[1]** It has long been established that judges are absolutely immune from liability for acts "done by them in the exercise of their judicial functions." *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 347 (1871). The Supreme Court has extended such absolute immunity to other public officials who perform activities that are "functionally comparable" to those of judges. *Butz v. Economou*, 438 U.S. 478, 513 (1978); *see also Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981) ("If an official's role is functionally equivalent to that of a judge,

---

[3]The state agencies named in Miller's First Amended Complaint were the California Department of Corrections, the California Youth and Adult Correctional Agency, and the Board itself.

the official will be granted equivalent immunity."). Such activities are sometimes referred to as "quasi-judicial." *See, e.g.*, *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976). "Absolute immunity flows not from rank or title . . . but from the nature of the responsibilities of the individual official." *Cleavinger v. Saxner*, 474 U.S. 193, 201 (1985). The Court has outlined a list of factors to consider in determining whether an official's functions are quasi-judicial in nature: (1) the need to insulate the official from harassment or intimidation; (2) the presence of procedural safeguards to reduce unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent in the official's decision; (5) the adversary nature of the process; and (6) the correctability of error on appeal. *Id.* at 202 (citing *Butz*, 438 U.S. at 512). This list of factors is nonexhaustive, however, and an official need not satisfy every factor to be entitled to absolute quasi-judicial immunity. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 923 (9th Cir. 2004) (noting that the *Butz* factors are "nonexclusive").

We hold that the Governor's review of parole decisions regarding prisoners convicted of murder pursuant to Article V, § 8(b) of the California Constitution is "functionally comparable" to a judge's role and is therefore entitled to absolute immunity from damages liability. Admittedly, several of the *Butz* factors weigh against such a conclusion—the Governor's review is not adversarial in nature, there is no requirement that the Governor consider precedent in making his determination, and the Governor is, by definition as an elected official, not insulated from political influence, as Governor Davis's almost uniform denials of parole amply demonstrate. Nevertheless, we believe that the Governor's review of parole decisions "shares enough of the characteristics of the judicial process," *Butz*, 483 U.S. at 513, to warrant absolute quasi-judicial immunity.

**[2]** First, the constitutional provision and related statute provide several procedural safeguards akin to the institutional

safeguards that constrain appellate courts. Article V, § 8(b) provides that the Governor, in making his decision, is limited to "the same factors which the parole authority is required to consider." *See In re Rosenkrantz*, 59 P.3d 174, 207 (Cal. 2003) ("[T]he Governor's decision must be based upon the same factors that restrict the Board in rendering its parole decision."). Section 8(b) also subjects the Governor's review "to procedures provided by statute," and the relevant statute, California Penal Code § 3041.2, limits the Governor's review of parole decisions to "materials provided by the parole authority." Cal. Penal Code § 3041.2(a); *see In re Gray*, 59 Cal. Rptr. 3d 724, 739 (Cal. Ct. App. 2007) (holding that the Governor erred in considering evidence that was not before the Board). Furthermore, § 3041.2 requires the Governor, if he decides to reverse or modify the Board's parole determination, to "send a written statement to the inmate specifying the reasons for his . . . decision." § 3041.2(b); *see also* Cal. Const. art. V, § 8(b) (requiring the Governor to "report to the Legislature each parole decision affirmed, modified, or reversed, stating the pertinent facts and reasons for the action"). Thus, like an appellate court, the Governor reviewing a parole decision is limited in the evidence and factors he may consider and must provide in writing the reasoning supporting his decision.

**[3]** Second, the Governor's decision can be corrected on appeal. The California Supreme Court has held explicitly that

> the courts properly can review a Governor's decisions whether to affirm, modify, or reverse parole decisions by the Board to determine whether they comply with due process of law, and . . . such review properly can include a determination of whether the factual basis of such a decision is supported by some evidence in the record that was before the Board.

*Rosenkrantz*, 59 P.3d at 212. Although the courts' review of the Governor's parole decisions is deferential, *see id.* at 218

("As long as the Governor's decision reflects due consideration of the specified factors as applied to the individual prisoner in accordance with applicable legal standards, the court's review is limited to ascertaining whether there is some evidence in the record that supports the Governor's decision."); *In re Smith*, 7 Cal. Rptr. 3d 655, 678 (Cal. Ct. App. 2003) ("[T]he Governor's decision is entitled to great judicial deference . . . ."), the "some evidence" standard of review at the very least ensures that the Governor's decisions comply with the requirements of due process, *Rosenkrantz*, 59 P.3d at 205 ("[D]ue process of law requires that the factual basis of a decision . . . to rescind parole be supported by some evidence."); *id.* at 209 ("[B]ecause due process of law requires that a [parole] decision . . . be supported by some evidence in the record, the Governor's decision is subject to judicial review . . . ."). Where the Governor's reversal of parole is not supported by "some evidence," the California courts have not hesitated to reverse the Governor's decision. *See Smith*, 7 Cal. Rptr. 3d at 678-79; *In re Smith*, 134 Cal. Rptr. 2d 781, 794 (Cal. Ct. App. 2003); *In re Capistran*, 132 Cal. Rptr. 2d 872, 876-88 (Cal. Ct. App. 2003).

**[4]** Finally, there is a strong need to ensure that the Governor is able to perform his reviewing function under Article V, § 8(b) without the threat of harassment through civil lawsuits. The Governor reviews dozens of parole grants in murder cases every year. *See* Nancy Vogel, *Gov. Paroles Second Killer*, L.A. Times, Nov. 27, 2003, at A1 (reporting that Governor Davis reviewed 294 grants of parole to defendants convicted of murder during his five years in office). If every reversal of a parole decision were to subject the Governor to potential liability, his capacity to perform the reviewing duties bestowed upon him by California's voters[4] would be seriously hindered. *Cf. Sellars*, 641 F.2d at 1303 ("If parole board offi-

---

[4]Article V, § 8(b) was added to the California Constitution via an amendment (Proposition 89) approved by California voters in the November 1988 general election. *See Rosenkrantz*, 59 P.3d at 206.

cials had to anticipate that each time they rejected a prisoner's application for parole, they would have to defend that decision in federal court, their already difficult task . . . would become almost impossible.").

**[5]** Thus, in light of the judicial nature of the Governor's review, the procedural safeguards that apply, and the judicial review that ensures that his review comports with due process, as well as the strong need to allow the Governor to perform his reviewing function without threat of harassing litigation, we hold that the Governor's review of parole decisions pursuant to his authority under Article V, § 8(b) and Penal Code § 3041.2 is "functionally comparable" to the role of a judge and, accordingly, that he is entitled to absolute quasi-judicial immunity for that review. This conclusion is in line with our prior decisions holding that parole board officials are entitled to absolute immunity "when they decide to grant, deny, or revoke parole." *Sellars*, 641 F.2d at 1303; *see also Anderson v. Boyd*, 714 F.2d 906, 908-09 (9th Cir. 1983). Given that the Governor, in exercising his authority under Article V, § 8(b), performs essentially the same function as parole board officials, and must review the identical record those officials review when deciding whether or not an inmate convicted of murder is suitable for parole, we see no reason to deny him the same immunity we afford those officials when they carry out their adjudicatory tasks.

Ultimately, Miller does not seriously dispute that the Governor is entitled to absolute immunity for his review of parole decisions authorized by Article V, § 8(b)—that is, grants of parole to inmates who have been convicted of murder. He argues, rather, that Governor Davis was not authorized under Article V, § 8(b) to review *his* parole decision because he was convicted not of murder but of *conspiracy* to commit murder. Thus, he argues, the Governor's reversal of that grant is not protected by absolute immunity. His argument is flawed.

The absolute immunity normally accorded officials performing quasi-judicial functions does not extend to "actions,

though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 12 (1991). Where the official acts merely in excess of his authority, however, he will not be deprived of immunity; "rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.' " *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (quoting *Bradley*, 80 U.S. (13 Wall.) at 351). "Jurisdiction should be broadly construed to effectuate the policies supporting immunity." *Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir. 1986) (en banc); *see also Stump*, 435 U.S. at 356 ("Because 'some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction . . . ,' the scope of the judge's jurisdiction must be construed broadly . . . ." (quoting *Bradley*, 80 U.S. (13 Wall.) at 352)) (citation omitted).

**[6]** In determining judicial immunity, we have distinguished between acts "in excess of jurisdiction" and acts "in the clear absence of jurisdiction" by looking to the subject-matter jurisdiction of the judge: "[a] clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction." *Mullis v. U.S. Bankr. Court, Dist. of Nev.*, 828 F.2d 1385, 1389 (9th Cir. 1987). In this case, the Governor's review of Miller's parole decision was not "clearly and completely outside the scope of [his] jurisdiction." *Demoran v. Witt*, 781 F.2d 155, 158 (9th Cir. 1986). Although Article V, § 8(b) and Penal Code § 1304.2 on their face refer only to persons convicted of "murder," it was not clear, at least before the California court clarified the scope of these provisions,[5] that the

---

[5]When, after the Governor's second denial of Miller's parole grant, the California Court of Appeal declared that Article V, § 8(b) does not extend to persons convicted of conspiracy to commit murder, the Governor was put on notice that he had no authority to reverse parole decisions relating to such individuals. From that time on he would have acted in the clear absence of jurisdiction had he reviewed a parole decision in a conspiracy to commit murder case. *See Bradley*, 80 U.S. (13 Wall.) at 351-52 ("Where there is clearly no jurisdiction over the subject-matter any author-

term "murder" did not encompass conspiracy to commit murder. Conspiracy to commit murder is certainly closely related to the substantive offense. Moreover, defendants convicted of conspiracy to commit murder in California are "punishable in the same manner and to the same extent as" defendants convicted of murder. Cal. Penal Code § 182(a); *see also id.* ("[I]n the case of conspiracy to commit murder, . . . the punishment shall be that prescribed for murder in the first degree."). Thus, the state of California clearly considers the culpability of individuals who conspire to commit murder on a par with that of individuals who actually carry out the deed themselves. Given the close relationship between these two offenses, Governor Davis's review of parole decisions involving a person convicted of conspiracy to commit murder was not clearly outside the scope of his jurisdiction. *See Crooks v. Maynard*, 913 F.2d 699, 701 (9th Cir. 1990) (holding that a judge did not act in clear absence of all jurisdiction where he had "colorable authority" to take the action in question).

**[7]** Although Governor Davis's review of Miller's parole grant, based on his erroneous reading of Article V, § 8(b), was in excess of his authority, it was not an act done in the "clear absence of all jurisdiction." *Cf. Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988) (holding that a judge who "misinterpreted a statute and erroneously exercised jurisdiction" did not act in the "clear absence of all jurisdiction"). Accordingly, Governor Davis is entitled to absolute quasi-judicial immunity for his reversal of the Board's decisions granting Miller parole.[6]

---

ity exercised is a usurped authority, and for the exercise of such authority, *when the want of jurisdiction is known to the judge*, no excuse is permissible.") (emphasis added). In the present case, however, Governor Davis reviewed the Board's decision granting Miller parole before the California court had clarified the scope of his authority under Article V, § 8(b).

[6]Because we hold that Governor Davis is entitled to absolute immunity, we do not reach the statute of limitations question.

The district court's dismissal of Miller's claims as to Governor Davis is

AFFIRMED.