[No. B205410. Second Dist., Div. Three. Apr. 2, 2009.]

In re JAMES MASONER on Habeas Corpus.

COUNSEL

Daniel Broderick, Federal Defender, and Monica Knox, Assistant Federal Defender, for Petitioner James Masoner.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie J. Garland and Kim Aarons, Deputy Attorneys General, for Respondent State of California.

OPINION

**KLEIN, P. J.**—Respondent and appellant, Board of Parole Hearings (hereafter, the Board), appeals from the superior court's order granting habeas corpus relief to petitioner and appellee, James Masoner. After concluding the Board's 2005 decision to deny parole was not supported by some evidence, the superior court granted the habeas corpus petition and ordered that Masoner be released from custody. In its appeal, the Board contests only the superior court's remedial order directing Masoner's release.

The superior court's order releasing Masoner is reversed, and the matter is remanded with directions.

## PROCEDURAL BACKGROUND

Masoner was convicted of second degree murder in the 1980's arising out of a drunk driving incident. He was sentenced to a prison term of 15 years to life. Following a parole suitability hearing on August 25, 2005, the Board found him unsuitable for parole. Masoner filed a petition for writ of habeas corpus in the California Supreme Court, which issued an order to show cause returnable before the superior court. On January 28, 2008, the superior court granted the habeas corpus petition and ordered Masoner's release. The Board appealed the superior court's ruling and filed a petition for writ of supersedeas asking for a stay. We granted the supersedeas writ and stayed the superior court's ruling pending further order.[1]

---

[1] Masoner was repeatedly found unsuitable for parole between 1997 and 2007. He filed habeas corpus challenges to some of those denials in both state and federal court. While litigation arising from the 2005 denial was proceeding, the Board again denied parole in 2006. Masoner's challenge in superior court to that decision has been stayed pending the outcome of this case. In December 2007, the Board found Masoner suitable for parole, but the Governor reversed. Masoner filed a habeas corpus petition in the California Supreme Court challenging the Governor's reversal; in December 2008, the Supreme Court denied that petition without prejudice to its being filed in superior court.

## THE COMMITMENT OFFENSE

The following description of the murder is taken from the transcript of the August 2005 parole suitability hearing.

Masoner had lunch with business associates during which he consumed alcohol. About 5:00 p.m., he attended a business-related party at which he drank a large amount of alcohol. He became so intoxicated that someone approached two of his colleagues and asked them to escort him home. The two colleagues, Dan Monnin and Tom Barber, could see Masoner was drunk and they agreed to take him home. Barber drove his own car and Monnin drove Masoner's 1983 Camaro with Masoner as a passenger.

Masoner had wanted to drive himself home. After Monnin and Barber refused to let him, he became uncooperative about giving directions. After searching unsuccessfully for a while, they stopped at a restaurant for coffee and something to eat. Masoner again tried to persuade his colleagues to let him drive, but they refused, telling him he was in no condition to leave on his own. Finally, they managed to find Masoner's house, which was up a hill at the end of a cul-de-sac.

Monnin pulled to the curb and turned off the engine. Leaving the keys in the ignition, he got out of the Camaro and went over to speak to Barber. Masoner got behind the wheel and sped down the hill. Within seconds, he had crashed the Camaro into a house at the bottom of the hill, punching a hole in one of its walls. The house was occupied by Timothy and Barbara Shaner and their two children, four-year-old Jessica and 18-month-old Morgan. The force of the crash propelled Masoner's car through three bedrooms, killing Jessica and injuring the other family members. A blood test administered 90 minutes after the crash registered a blood-alcohol level of 0.23 percent.

## THE BOARD'S FINDINGS

The hearing panel said it was denying parole "primarily . . . based on the commitment offense, and the other issue has to do with insight." The panel found that the commitment offense was aggravated because Masoner had been callous in deciding "to drive his car very, very drunk," "regardless of what the outcome of this might be . . . [and] who might be hurt." The panel noted Masoner's very positive 2005 psychological evaluation, as well as his discipline-free incarceration, his participation in Alcoholics Anonymous, and his good parole plans and family support. On the other hand, referencing

Masoner's statements during a parole hearing in 2000, the panel said it had concerns about his insight into, and remorse for, the crime he had committed.

## THE SUPERIOR COURT'S RULING

The superior court reversed the Board's denial of parole. The court found there had been nothing particularly callous about the commitment offense, and that the record showed Masoner had accepted responsibility for killing the victim, "especially in light of petitioner's psychological reports." The superior court concluded "the Board's decision that petitioner is unsuitable for parole and remains a danger to public safety is not supported by 'some evidence' and is arbitrary and capricious."

The superior court then issued the following order: "The petition for writ of habeas corpus challenging the 2005 denial of petitioner's parole is granted. In 2004, the Board set his total term of confinement at 187 months. As of today, petitioner has already exceeded his total term of confinement. [¶] Since the Court has reviewed the materials that were before the Board and found no evidence to support its denial of parole and no evidence demonstrating that petitioner remains a danger to public safety, a remand to the Board in this case would amount to an idle act. (*In re Smith* (2003) 109 Cal.App.4th 489, 507 [134 Cal.Rptr.2d 781].) [¶] The defendant is ordered released."

## CONTENTION

The superior court erred by ordering Masoner's release.

## DISCUSSION

1. *Legal principles governing parole decisions.*

Penal Code section 3041, subdivision (a),[2] provides: "One year prior to the inmate's minimum eligible parole release date a panel [of the Board of Parole Hearings] shall . . . meet with the inmate and shall normally set a parole release date as provided in Section 3041.5. . . . The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates."

As we recently explained:

---

[2] All further statutory references are to the Penal Code unless otherwise specified.

"Release on parole is thus 'the rule, rather than the exception.' [Citation.] A parole release date must be set unless the Board determines that public safety requires a lengthier period of incarceration. [Citations.] Every inmate has a constitutionally protected liberty interest in parole decisions ordered by the Board and reviewed by the Governor. [Citation.]

"In determining suitability for parole, the Board must consider certain factors specified by regulation. Circumstances tending to establish unsuitability for parole are that the inmate (1) committed the offense in an especially heinous, atrocious, or cruel manner; (2) has a previous record of violence; (3) has an unstable social history; (4) has sexually assaulted another individual in a sadistic manner; (5) has a lengthy history of severe mental problems related to the offense; and (6) has engaged in serious misconduct while in prison. [Citations.]

"Circumstances tending to show suitability for parole include that the inmate (1) does not possess a record of violent crime committed while a juvenile; (2) has a stable social history; (3) has shown signs of remorse; (4) committed the crime as the result of significant stress in his or her life, especially if the stress had built over a long period of time; (5) committed the crime as a result of battered woman syndrome; (6) lacks any significant history of violent crime; (7) is of an age that reduces the probability of recidivism; (8) has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) has engaged in institutional activities that suggest an enhanced ability to function within the law upon release. [Citations.]" (*In re Aguilar* (2008) 168 Cal.App.4th 1479, 1486–1487 [86 Cal.Rptr.3d 498].)

"*The foregoing factors are general guidelines, and the Board must consider all relevant information.* [Citations.]" (*In re Aguilar, supra,* 168 Cal.App.4th at p. 1487, italics added, fn. omitted.) " '*Such* [*relevant*] *information shall include* the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.' (Cal. Code Regs., tit. 15, § 2402, subd. (b).)" (*Id.* at p. 1487, fn. 6, italics added.)

### 2. *Standard of review.*

In the case at bar, the Board does not contest the superior court's grant of habeas corpus relief on the ground there was no evidence to support the Board's finding that Masoner was unsuitable for parole. The only disputed issue is the propriety of the superior court's remedial order directing that Masoner be released from custody.

As explained by *In re Lugo* (2008) 164 Cal.App.4th 1522 [80 Cal.Rptr.3d 521], our standard of review in this situation is de novo: "Here, the issues raised by the Board are purely legal in that it claims the court's order contravenes section 3041.5[3] and violates separation of powers principles found in the California Constitution. These purely legal issues do not require us to determine whether the court properly evaluated the evidence in determining the need for relief. Instead, the only issue is whether the court's form of relief violates state law. De novo review is therefore appropriate." (*Id.* at pp. 1535–1536, fns. omitted.)

### 3. *Discussion.*

The Board argues the superior court's remedial order must be reversed because it "materially impairs the inherent discretion of the Board and usurps the Governor's constitutional authority to conduct final review of parole matters."[4] We agree.

The only authority cited by the superior court in support of its remedial order is *In re Smith, supra*, 109 Cal.App.4th 489. But *Smith* does not support the remedial order because it involved a fundamentally different situation. Smith had been found suitable for parole by the Board, but that decision was reversed by the Governor. The superior court, finding no evidence to support the Governor's decision, granted Smith's habeas corpus petition and ordered his release on parole. After agreeing with the superior court that the Governor's decision should be reversed, the Court of Appeal in *Smith* discussed the appropriate remedy:

---

[3] Section 3041.5 sets out rules for conducting parole suitability hearings, notifying inmates of the Board's decisions and, when parole has been denied, scheduling the next parole hearing.

[4] More specifically, the Board argues the remedial order "impermissibly presumed that the record before the superior court contained all evidence available to the Board, and precluded the Board from relying on *any* evidence or considering any new information that may have emerged while the Board's decision was under review. . . . Moreover, the Board is vested with sole discretion to set a base term of confinement once a prisoner is found suitable for parole. (Cal. Code Regs., tit. 15, § 2403.) The court's order deprives the Board of this discretion and deprives the Governor of his constitutionally mandated authority to conduct final review of parole matters. . . . As such, the order curtailed the Board's exercise of discretion and exceeded the court's authority." (Italics omitted.) Because we conclude the remedial order must be reversed because it prevents the Board and the Governor from considering any new evidence, we need not reach the Board's other arguments.

"Division Six of our court was recently presented with a similar case, *In re Capistran* (2003) 107 Cal.App.4th 1299 [132 Cal.Rptr.2d 872]. . . . [T]he Board found Capistran suitable for parole and set a parole date. The Governor reversed the Board's decision and Capistran filed a petition for a writ of habeas corpus. The trial court granted the petition and ordered the Board to release Capistran. [Citation.] On the Governor's appeal, Division Six agreed with the trial court that Capistran was entitled to writ relief but remanded to the trial court with directions to allow the Governor, in his discretion, to issue a new decision. [Citation.]

"As authority for this approach, *Capistran* relies on a statement from *In re Rosenkrantz* [(2002)] 29 Cal.4th [616], 658 [128 Cal.Rptr.2d 104, 59 P.3d 174], about the appropriate procedure for the courts to follow when a decision by the *Board* is not supported by some evidence and is thus devoid of a factual basis: '[T]he court should grant the prisoner's petition for writ of habeas corpus and should order the Board to vacate its decision denying parole and thereafter to proceed in accordance with due process of law.' It follows, according to *Capistran*, that because the 'Governor and the Board possess equal discretion in reviewing parole suitability [citation], so the Governor should be ordered to vacate his decision reversing the Board's decision and may thereafter proceed in accordance with due process.' [Citation.] We disagree.

"Although the *Board* can give the prisoner a new hearing and consider additional evidence, the *Governor's* constitutional authority is limited to a review of the materials provided by the Board. (§ 3041.2, subd. (a); *In re Rosenkrantz, supra*, 29 Cal.4th at pp. 659–660; see also Cal. Const., art. V, § 8, subd. (b) [the Governor may only affirm, modify or reverse the Board's decision 'on the basis of the same factors which the parole authority is required to consider'].) Since we have reviewed the materials that were before the Board and found no evidence to support a decision other than the one reached by the Board, a remand to the Governor in this case would amount to an idle act." (*In re Smith, supra*, 109 Cal.App.4th at pp. 506–507.)

■ Smith does not help Masoner because the parole decision being reversed here was made by the Board, not the Governor, and the Board's authority in making parole determinations is fundamentally different from the Governor's authority. "[*T*]*he Governor's constitutional authority is limited to a review of the materials provided by the Board*" (*In re Smith, supra*, 109 Cal.App.4th at p. 507, italics added; see *In re Gray* (2007) 151 Cal.App.4th 379, 402 [59 Cal.Rptr.3d 724] [Governor erred in reviewing Board's parole determination by relying on evidence that was not before the Board]), *but the*

*Board has the authority to consider "[a]ll relevant, reliable information"* (Cal. Code Regs., tit. 15, § 2402, subd. (b), italics added). The logic of this fundamental distinction dictates that while the superior court could have properly remanded this matter to the Board with directions to hold a new parole suitability hearing, it could not properly order Masoner's release.

The Board cites *In re Ramirez* (2001) 94 Cal.App.4th 549 [114 Cal.Rptr.2d 381], disapproved on another ground in *In re Dannenberg* (2005) 34 Cal.4th 1061, 1100 [23 Cal.Rptr.3d 417, 104 P.3d 783], a case involving the permissible scope of habeas corpus relief where the decision being reversed was made by the Board, not by the Governor. In *Ramirez,* the superior court granted the inmate's habeas corpus petition because it "found no evidence to support the Board's findings that the murder Ramirez committed was especially atrocious, or that Ramirez needed therapy in order not to be a threat to others. The court acknowledged that Ramirez had an unstable childhood and a serious juvenile criminal record, but decided his exceptional performance while incarcerated and his excellent prospects for a stable and productive life upon release made him suitable for parole. The court ordered the Board to hold a new hearing and set a parole date for Ramirez." (*In re Ramirez, supra,* at p. 552.) The Court of Appeal agreed Ramirez's habeas corpus petition was meritorious, but held "the trial court erred by making its own evaluations of the evidence before the Board, and by ordering the Board to set a parole date. In deference to the Board's broad discretion over parole suitability decisions, courts should refrain from reweighing the evidence, and should be reluctant to direct a particular result. [Citation.] The Board must be given every opportunity to lawfully exercise its discretion over Ramirez's parole application." (*Id.* at p. 572.) The Court of Appeal ordered the superior court to "enter an order granting the habeas corpus petition, and requiring the Board to conduct another parole suitability hearing." (*Ibid.*)

The implicit basis for the result in *Ramirez* is the doctrine of separation of powers. As explained by *In re Lugo, supra,* 164 Cal.App.4th 1522, which relied on the doctrine to reverse an order remedying the Board's erroneous issuance of a multiyear denial under section 3041.5, subdivision (b)(2): "The separation of powers principle is embodied in the California Constitution, which provides as follows in article III, section 3: 'The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution.' ' "The separation of powers doctrine limits the authority of one of the three branches of government to arrogate to itself the core functions of another branch. [Citations.]" [Citation.]' (*In re Rosenkrantz, supra,* 29 Cal.4th at p. 662.) Although the doctrine is not

intended to prohibit one branch from taking action that might affect those of another branch, the doctrine is violated when the actions of one branch 'defeat or materially impair the inherent functions of another branch. [Citation.]' (*Ibid.*) *Intrusions by the judiciary into the executive branch's realm of parole matters may violate the separation of powers.* (See *Hornung v. Superior Court* (2000) 81 Cal.App.4th 1095, 1099 [97 Cal.Rptr.2d 382] [court order allowing inmate to question commissioners regarding their parole-related decision process violated separation of powers].)" (*In re Lugo, supra,* at p. 1538, italics added.)

*Lugo* held that the superior court, by ordering the Board "not to deny further parole consideration for more than one year in the case of prisoners who had been formerly denied for one year, in the absence of a significant change in circumstances," had "violate[d] the separation of powers and intrude[d] upon the inherent discretion afforded to the Board to decide parole matters." (*In re Lugo, supra,* 164 Cal.App.4th at pp. 1535, 1540.)

Based on the principles discussed in *Ramirez* and *Lugo,* we conclude the superior court's remedial order in the case at bar violates the separation of powers doctrine. Our conclusion is supported by the results in two recent cases, both of which involved habeas corpus petitions filed directly in the Court of Appeal. In *In re Gaul* (2009) 170 Cal.App.4th 20 [87 Cal.Rptr.3d 736], the Court of Appeal found the record before the Board to be "devoid of any evidence to support the conclusion Gaul's release would constitute a current threat to public safety," and then directed the Board to find Gaul suitable for parole unless the Board "determines that new evidence of Gaul's conduct in prison subsequent to his 2007 parole hearing supports a determination he currently poses an unreasonable risk of a danger to society if released . . . ." (*Id.* at pp. 36, 40.) *Gaul* reasoned that "when the reviewing court has determined there is no evidence in the record that would support the denial of parole, there is no reason to order the Board to conduct any further hearing on the matter, *at least in the absence of some new evidence about the inmate's posthearing conduct.*" (*Id.* at p. 40, italics added.) *Gaul* then acknowledged "the theoretical possibility—however unlikely it may be—that Gaul has engaged in conduct since the November 2007 parole hearing that would suggest he is no longer suitable for parole." (*Ibid.*)

A similar result was reached by *In re Singler* (2008) 169 Cal.App.4th 1227 [87 Cal.Rptr.3d 319]. *Singler,* too, granted habeas corpus relief because "the evidence presented at the 2006 parole hearing does not support the Board's finding that Singler was unsuitable for parole . . . ." (*Id.* at p. 1245.) The

Court of Appeal then ordered the Board to find Singler suitable "unless *new evidence* of his conduct and/or change in mental state *subsequent to the 2006 parole hearing* is introduced and is sufficient to support a finding that he currently poses an unreasonable risk of danger to society if released on parole." (*Ibid.*)[5]

■ Thus, we conclude the superior court's remedial order in the case at bar infringed the Board's discretion to make parole decisions on the basis of all relevant information. As noted, *ante*, the Board is required to consider such factors as the inmate's "past and present mental state; . . . behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control . . . and any other information which bears on the prisoner's suitability for release." (Cal. Code Regs., tit. 15, § 2402, subd. (b).) This necessarily involves the Board's consideration of any relevant information that may have come to light between the time parole was denied and the time the superior court granted habeas corpus relief.

In a supplemental letter brief, Masoner cites *In re Aguilar, supra,* 168 Cal.App.4th 1479, and *In re Burdan* (2008) 169 Cal.App.4th 18 [86 Cal.Rptr.3d 549], characterizing them as new cases that entirely undercut any basis for the Board's claim that the superior court lacked authority to order Masoner's release. But both of these cases are inapposite because they involved parole denials made by the Governor, not the Board. Masoner also argues "it is disingenuous (at best) for the Board to suggest that new and negative information may have emerged since 2005," because the Board granted him parole in December 2007. However, by the time Masoner wrote these words in November 2008, it is possible that relevant new information had emerged since the Board's 2007 findings. Now, even more time has gone by.

■ The remedial order here also infringed on the Governor's right to review decisions of the Board. As we pointed out in *In re Tokhmanian* (2008) 168 Cal.App.4th 1270, 1276–1277 [86 Cal.Rptr.3d 250]: "Article V, section 8 of the California Constitution grants the Governor power to review board decisions 'with respect to the granting, denial, revocation, or suspension' of parole . . . . The Governor's power to review a parole decision begins only when the decision is effective, whether due to lapse of time, board approval, or court action." (Italics omitted.) The Governor has the authority to weigh

---

[5] *Gaul* and *Singler* also refute Masoner's argument that there is a crucial distinction between cases finding "no evidence to support a finding of current risk to public safety" and other cases "finding only that some of the reasons given by the Board for denying parole were unsupported by the evidence." Masoner posits that, where a court has found no evidence in the record to support the Board's denial of parole, there is no reason to remand the matter to the Board for a further parole suitability decision. But *Gaul* and *Singler* show that Masoner's theory is incorrect.

suitability factors differently than the Board: "Although 'the Governor's decision must be based upon the same factors that restrict the Board in rendering its parole decision' [citation], the Governor undertakes an independent, de novo review of the inmate's suitability for parole. [Citation.] Accordingly, the Governor has discretion to be 'more stringent or cautious' in determining whether a defendant poses an unreasonable risk to public safety." (*In re Shaputis* (2008) 44 Cal.4th 1241, 1258 [82 Cal.Rptr.3d 213, 190 P.3d 573].)

■ The Board concedes it is "not suggest[ing] that the appropriate remedy is one that would entitle the executive branch to disregard a judicial determination regarding the sufficiency of the evidence and to simply repeat the same decision on the same record. Instead, the executive branch must remain vested with the discretion to determine whether a new review is necessary, or whether, in light of the court's findings, the inmate should be released. Because some time may have passed between the Board's and the reviewing court's decisions, remand appropriately gives the Board and the Governor the necessary opportunity to review the record and determine whether the information relied upon by the court remains current and whether any new information weighing for or against the inmate's suitability for parole emerged while his decision was under review."

■ For these reasons, we conclude the superior court's determination that "a remand to the Board in this case would amount to an idle act" was incorrect. The matter should have been remanded to let the executive branch exercise its statutory and constitutional authority over parole decisions. The Board will be directed to find Masoner suitable for parole unless new information discovered subsequent to his 2007 parole hearing[6] supports a determination that he poses an unreasonable risk of danger if released on parole.

## DISPOSITION

The superior court's January 28, 2008 order releasing Masoner on parole is reversed. The matter is remanded to the superior court with directions to issue an order granting Masoner's petition for writ of habeas corpus and directing the Board to vacate its decision of August 25, 2005, and to conduct a new parole suitability hearing within 120 days of the issuance of the remittitur or final resolution in the California Supreme Court. At that hearing, the Board is

---

[6] See footnote 1, *ante.*

directed to find Masoner suitable for parole unless new evidence of his conduct or a change in his mental state subsequent to his 2007 parole hearing supports a determination that he currently poses an unreasonable risk of danger to society if released on parole.

Croskey, J., and Kitching, J., concurred.

On May 4, 2009, the opinion was modified to read as printed above. Petitioner's petition for review by the Supreme Court was denied July 15, 2009, S172891. George, C. J., did not participate therein.